CANTON EXCHANGE BANK v. YAZOO COUNTY et al.*

(Division A. June 15, 1926. Suggestion of Error Overruled July 12, 1926.)

[109 So. 1. No. 25395.]

1. ASSIGNMENTS.
   As between several parties claiming legal title to fund assigned, assignee first giving notice to debtor has priority.

2. ASSIGNMENTS.
   Right of bank under assignment from contractor to funds retained by county was not affected by effort to assign fund to guaranty company, where notice of assignment had been properly served by bank but not by guaranty company.

3. ASSIGNMENTS. *Service by guaranty company on county of proposal for bond by contractor, containing purported assignment, to show right of guaranty company of subrogation, did not render assignment subordinate to later assignment by contractor to bank.*
   Service of notice by guaranty company on county of proposal for bond, containing purported assignment by contractor to guaranty company, *held* to have been presented only to show right of guaranty company to be subrogated to county's rights, which were distinctly recognized therein, and was not such as would render such assignments subordinate to later assignment by contractor to bank.

4. ASSIGNMENTS.
   Assignee obtains no greater right in thing assigned than was possessed by assignor.

5. SUBROGATION.
   Any right acquired by guaranty company to fund retained by county until completion of contract arose under equitable subrogation, which originated, if at all, on day of execution of bond by contractor.

6. SUBROGATION.
   Subrogation begins at time surety assumed obligation under which thing subrogated is deposited as security or arises.

7. SUBROGATION. *Surety company having paid materialmen's and laborers' claims is entitled to right of subrogation to funds retained*

580 Canton Exch. Bank *v.* Yazoo Co. *et al.* [Sup. Ct.

Brief for Appellant. [144 Miss.

*by county until completion of contract, as against subsequent assignment made by contractor (Code 1906, sections 361, 363; Hemingway's Code, sections 3734, 3736; Laws 1918, chapter 217).*

In view of Code 1906, sections 361, 363, Hemingway's Code, sections 3734, 3736, and Laws 1918, chapter 217, relative to bond of contractors engaged in public work, surety company having paid laborers' and materialmen's claims is entitled to be equitably subrogated to fifteen per cent. retained by county, as against subsequent assignment by contractor of all funds under contract.

---

*Corpus Juris-Cyc. References: Assignments, 5 C. J., p. 953, n. 36; p. 958, n. 89; Subrogation, 37 Cyc, p. 380, n. 85; p. 415, n. 9; p. 417, n. 24: Priority as between different assignees of same chose in action as affected by notice to debtor, see note in 31 A. L. R. 876; 2 R. C. L., p. 628, 1 R. C. L. Supp. 595; 5 R. C. L. Supp., p. 105 et seq.; Commencement of right of surety to subrogation, see 25 R. C. L., p. 1329; 4 R. C. L. Supp., p. 1629; 5 R. C. L. Supp., p. 1373.*

Appeal from chancery court of Yazoo county.

Hon. V. J. Stricker, Chancellor.

Bill of interpleader by Yazoo county against the Canton Exchange Bank and others, wherein defendant bank filed a cross-bill. Decree in favor of defendant United States Fidelity & Guaranty Company and defendant Bank appeals. Affirmed.

*H. B. Greaves* and *Green, Green & Potter,* for appellant.

The appellee, the United States Fidelity and Guaranty Company, undertook to set up an assignment to it conveying all moneys to be earned by J. R. Parker, embodied in the application for bond, which assignment never came to light until after the contract was finished and after the Canton Exchange Bank had requested the board of supervisors of Yazoo county, Mississippi, to comply with their agreement and pay to said bank the balance (retainage) in their hands due J. R. Parker.

This assignment was hid away in the private vaults of the appellees from September, 1921, until September 24, 1923, and until the road had been completed by J. R.

Parker with appellant's money, and accepted by the road commissioners and the board of supervisors.

I.   *The validity and effect of the assignment to the bank.* The validity of this assignment has not been questioned by any party to this suit in argument; neither has there been any question raised as to what funds were covered by it; and the only point pressed in argument in the court below was as to its effect on appellee's rights. As to successive assignments, Judge Whitfield states the rule in *Lumber Co.* v. *Newcomb,* 79 Miss. 462 at 466. This rule has been repeatedly approved by this court. *Spengler* v. *Lumber Co.,* 94 Miss. 780; *Peck-Hammond Co.* v. *Williams,* 77 Miss. 824.

In the *Spengler case,* at page 814, Judge Whitfield said, "If, as said by the New York Court of Appeals, the legislature intended to forbid assignments in cases of this sort . . . nothing was easier than for the legislature to put in the Mechanic's Lien Law that sort of prohibitive provision."

We find no such provision as this in the law requiring a bond in cases of the kind there considered, but we do now find such a provision in the Mechanic's and Materialmen's Lien Statute, Laws of 1918, ch. 128; sec. 2434 A, Hemingway's Code Supplement.

The Spengler Lumber Co. case is cited and approved as the law in *Strickland Lumber Co.* v. *Rheinhardt,* 115 Miss. 749, 76 So. 643; *Enochs Lumber Co.* v. *Garber,* 116 Miss. 229, 76 So. 730; *First Nat'l Bank* v. *Monroe County,* 131 Miss. 828, at 852, 95 So. 727; *Delta Lumber Co.* v. *Greenwood Bank & Trust Co.,* 123 Miss. 772, 86 So. 590.

II.   *The Canton Exchange Bank, appellant, had a right to mandamus the board of supervisors of Yazoo county to issue its warrants to it.* See *McGraw* v. *Board of Supervisors,* 125 Miss. 420. From the authorities named we can conceive of no law better established in this state than: (1) That an assignment of money due and to be-

come due is good; and (2) that where two assignments are made of the same funds, that assignment takes precedence, notice of which is first given to the debtor.

On the question of priority of assignments of choses in action, the supreme court of the United States and the supreme court of Mississippi hold directly conflicting views. See *Salem Trust Co.* v. *Manufacturers Finance Co.,* 68 L. Ed. (U. S.), 634.

Although it is true that our court holds that while the consent of the debtor to the assignment is not necessary, yet it is well established in this state to be the law that the first one to notify the debtor of his assignment takes precedence over any other assignment and this holding of the Mississippi court is in full accordance with the rule as established by the English courts. 31 A. L. R. at 876. The states holding with Mississippi are California, Iowa, District of Columbia, Maine, Maryland, Missouri, Oklahoma, Tennessee, Virginia, New Jersey, Pennsylvania and Vermont. See 31 A. L. R. 876 and the cases there cited.

The minority view holding that the first assignment takes precedence, regardless of notice is held by the United States and Kentucky, Massachusetts, Minnesota, New York, Oregon, Texas, and West Virginia.

III.  *We will now consider the question of subrogation.* The lower court construed *Bank* v. *Monroe County,* 131 Miss. 828, 95 So. 727, as holding that the fifteen per cent "retainage" was for the protection of bondsman and could not be assigned by Yazoo county.

We have carefully read and re-read this contract from cover to cover, and find no provision in the contract which requires the contractor to pay labor or material before completing his contract and receiving his retainage. There is no reference to paying for any labor or material as a condition precedent to completing this contract, the completion of which is required, refers to plans and specifications for building the road and simply states at

March, 1926] Canton Exch. Bank *v.* Yazoo Co. *et al.* 583

144 Miss.]                    Brief for Appellant.

the end that the bond shall be made on form hereto attached. This contract does not say "provided debts due for labor and material are paid." A similar provision to this, however, has been repeatedly held by the New Jersey supreme court to be for the benefit of the municipality. See *U. S. F. & G. Co.* v. *Mayor of the City of Newark,* 81 Atl. 758, 37 A. L. R. (N. S.) 576. The opinion goes into this and like provisions fully and sustains our contention. See, also, *Sullivan* v. *Visconti,* 68 N. J. 543; *Miller* v. *Stockett,* 64 N. J. 614, 64 Atl. 619.

The next reference to this fifteen per cent retainage is under the heading of "Maintenance," page 14 of the contract. This provision especially states, "fifteen (15) per cent of the final estimate will be retained by the county or district to enforce this requirement."

This court has already decided that there is nothing in this contract which requires payment for labor and material. See *First Nat'l Bank* v. *Monroe County,* 131 Miss. 853.

Many countless thousands of contracts have been completed and labor and materialmen left unpaid. It is an idle indulgence in speculation to insist or suggest that payment for labor and material is a part of this contract under review and a condition precedent to receiving final settlement. The bond was given for the purpose of protecting labor and materialmen, among other things. Bonding companies make these bonds for a premium which they consider ample protection for the risk they incur.

The bond was given and was to be held by the county to indemnify it against loss, damage, or a failure to complete the road as directed by the contract, as additional security to the fifteen per cent reserved by the county, and in addition to protest labor and materialmen. Statutes of 1918, ch. 217.; sec. 447 et seq., Hemingway's Supplemental Code.

This question was pressed on this court in *Bank* v. *Monroe County,* 131 Miss. 828, and the court in answer

stated: "Since the county was under no obligations either by law or contract to the furnishers of labor or materials, it is not clear that insofar as the right of the county is concerned, performance of the contract included the payment of these claims."

The very purpose of this provision of the bond was to guarantee that after Parker was paid in full by the county, he, Parker, would liquidate his debts, for both labor and material, set out in the bond, in full view of the fact that laborers and materialmen can acquire no lien against the state or any sub-division thereof.

IV. *Equitable Subrogation.* While we do not think the question of equities of subrogation has any bearing on the rights of the parties here, under the holding of our court with regard to assignments of choses in action, as long established, *however,* since appellees now base their entire right to recover here on the doctrine of equitable subrogation giving appellees a right to be preferred to the bank, we submit that the cases appellee relied upon, even if appellant had no assignment, would not justify this court in sustaining appellees' contention, because if equities are to govern, appellant's equities are greater than appellees'.

Appellees base their case on the United States supreme court opinion in *Prairie State National Bank* v. *U. S.,* 164 U. S. 227, 41 L. Ed. 412. However, the court will observe that there the contractor abandoned the contract and the surety was compelled to complete the contract at a loss of over fifteen thousand dollars, more than payments due by the government. In the instant case, Parker completed the contract in every detail with money furnished by the appellant. Had the surety completed the contract, a different question would have been presented.

Again, the appellees executed this bond with the full knowledge that the county could pay this retainage to the contractor, Parker, even though Parker had paid none of

his employees. Also, appellants knew Parker could assign his retainage and knew that the legislature did not prohibit such an assignment. If so desired, the legislature could have so stated as they did with regard to laborers' lien when no bond was given, and further that the legislature provided in cases of laborers' liens when bond was given, the contractor could assign the money due him under such contract. See Acts of 1918, chapter 128, page 126, and also Hemingway's Supplemental Code, section 2434a and b.

Prairie State National Bank is quoted by Justice BREWER in *Henning* v. *U. S. F. & G. Co.*, 52 L. Ed. 547; but in the statement of the case by Justice BREWER, we read: "The moneys so lent were paid directly by the bank to Henning, and handled and disbursed by him, without any supervision or control upon the part of the Bank of Spencer." The inference to be reasonably drawn from this is that this was material in determining the law governing this case and the decision would have been otherwise had supervision been exercised and money spent in carrying out contract.

What right could the appellees here be subrogated to? The laborers had no liens on the money. The county could not withhold any money from the contractor to pay laborers. This court has decided that. The fifteen per cent was retained, according to the contract for the very purpose of requiring the contractor to complete the road and keep it in good condition for thirty days after completion. This provision of the contract was carried out by the contractor with the bank's money and could not have been done except for the money advanced him, the contractor, by the appellant.

Our own court in the *Monroe county case,* 131 Miss. at 851, covers our contention here like a blanket; and but for the fact that the lower court "overruled" this court on this point, I would stop here. In considering the question of subrogation of surety over an assignee of a contract, it is interesting to note that the courts apparently

holding that the bondsman is entitled to preference do not recognize the Mississippi rule with regard to priority of an assignment, which Mississippi· rule is maintained by a majority of the states and England, which I have hereinbefore set out.

The United States supreme court apparently seems to be against our contention, but if analyzed we will find that in every instance the contractor failed to complete his contract, and defaulted and the surety had to complete the same. See *Hardoway* v. *Nat'l Surety Co.,* 211 U. S. 552, 33 L. Ed. 321; *Hennington* v. *U. S.,* 208 U. S. 404, 52 L. Ed., 547; *Prairie State Nat'l Bank* v. *U. S.,* 164 U. S. 227, 41 L. Ed. 412; *First Nat'l Bank* v. *Pesha,* 99 Neb. 785, 157 S. W. 924; *Maryland Casualty Co.* v. *Washington Nat'l Bank,* 92 Wash. 497; and *In re Schofield Co.,* 215 Fed. 45.

The editor of the Annotated Cases, on p. 616, 1918-D, seems to put the holdings of the United States supreme court, with regard to subrogation of surety over an assignee of a contract, as follows: "The claims of an assignee of a building contractor for government work is equitable only and is subordinate to that of a surety on the contractor's bond, who completes the contract after the abandonment of it by the contractor," citing cases. But in all of these cases for the surety to be entitled to claim the reserved fund as against an assignee thereof, the money must be advanced by him after default of the contractor and for the purpose of performing his contract of suretyship, which was not done in this instant ·case.

Paragraphs of like ·character as the paragraphs here under review providing for retainage in contracts of a certain percentage of the contract price till complete performance of the contract has been construed by the New Jersey courts as not entitling laborers or bondsmen under the doctrine of equitable subrogation to be preferred to an assignee, holding the provision in the contract such as we are considering here was not intend-

ed for the benefits of laborers or materialmen or bonds-men, and the contractor had a right to assign the same. See *U. S. F. & G. Co.* v. *Mayor, etc., of the City of Newark*, 37 L. R. A. (N. S.) 575, 81 Atl. 758.

A number of cases construing provisions for retainage stronger than the one here are grouped in 37 L. R. A. (N. S.) 575. The doctrine of subrogation does not apply in New York where a surety took an assignment with knowledge of a prior assignment. See *People* v. *Third Nat'l Bank*, 159 New York 362. See the following cases containing our view: *Northwestern Nat'l Bank* v. *Guardian Casualty Co.*, 93 Wash. 635, Ann. Cas. 1918-D 645 at 650; *Philadelphia Third Nat'l Bank* v. *Atlantic City*, 126 Fed. 413, 130 Fed. 751; *American Bridge Co.* v. *Boston*, 202 Mass. 394, 88 N. E. 1089. See also authorities grouped in Ann. Cases 1918-D 617.

It is unnecessary to give notice of an assignment of the proceeds of a building contract to the other creditors in order to render it valid. See *Hall* v. *Kansas City Terra Cotta Co.*, Ann. Cases 1918-D 605 and note. An assignee is entitled to all unpaid purchase money prior to abandonment as against a surety who completed the contract. See *Dowling* v. *Seattle*, 22 Wash. 592.

Where money is advanced under an assignment to pay for labor and material, the assignment is superior to the equitable claim of the company. *Fidelity & Deposit Co.* v. *Stafford*, 93 Kans. 539; *Pugit Sound State Bank* v. *Gallucci*, 82 Wash. 445; *People* v. *Third Nat'l Bank*, 159 N. Y. 382, 54 N. E. 35, Ann. Cases. 1916-A 767; *Hippwell* v. *Nat'l Surety Co.*, 130 Iowa, 656, 105 N. W. 318.

It is held money reserved according to the terms of the contract until its completion passes to the holder of an assignment thereof from the contractor, which is accepted by the debtor to be paid when the contract is completed, and not to the surety of the contractor who suffered a loss by virtue of his suretyship.

If Parker had abandoned his contract before he had completed it and the appellee, his bondsman, had been compelled to complete the contract at a loss, then there would have been nothing for Parker's assignee. *Title Guarantee Trust Co.* v. *Dutcher,* 203 Fed. 169; *Duncan* v. *Guillet,* 161 Pac. 299; *Fidelity & Deposit Co.* v. *Northwestern Nat'l Bank,* 90 Wash. 179.

The board of supervisors had the right to have paid Parker or his assigns all the retainage and his bondsman could not have complained, even though they knew there were outstanding debts due for labor and material. When this contract was finished, Parker had no rights in this retainage until the appellant was paid in full to which the appellee could be subrogated.

The laborers and materialmen had no claim on the county as against Parker. Appellee's only hope of subrogation is in the fact that it paid claims against Parker, so their subrogation is to the rights of the laborers as against Parker, and they had no righs in this case as against Parker's assignee, the appellant in this cause.

V. *As to attorney's fees.* Attorney's fees *provided* for in said notes are a part of this debt and collectible as such. *Bank of Duncan* v. *Brittain,* 92 Miss. 545; *Duggan* v. *Champlin,* 75 Miss. 441; *Brahan* v. *Bank,* 72 Miss. 266; *Eyrich* v. *Bank,* 67 Miss. 60; *Butt* v. *Brashers,* 118 Miss. 339.

*W. M. Hall* and *Barbour & Henry,* for appellees.

The contention of counsel for appellant is that this contest was between two successive assignees, and that appellant, one assignee, gave the debtor, Yazoo county, the first notice, and under the Mississippi rule for determining priority between such assignees, had the superior right; and the chancellor, therefore, erred in refusing to decree the fund in controversy to appellant.

We contend that the contest was between the appellant as an assignee of the contractor and appellee as the contractor's surety, and that the appellant's notice did not affect appellee's rights.

As will be seen by reference to it, the assignment in the contractor's application for appellant's suretyship was no more than an acknowledgment by the contractor that his surety upon his default was entitled to be subrogated to his rights, as well as the obligee-creditor's rights and securities, and his assignment, at that time becoming operative, to aid the subrogation. Being supplemental to and in aid of appellant's right of subrogation when its principal defaulted and its obligation arose, it is not of course inconsistent with that right and could not affect it.

Appellant in taking an assignment of the fruits of the contract was charged with notice of the terms of the contract, the suretyship of this appellee and the rights that accrued to it therefrom by operation of law. If appellee in that situation is to be considered an assignee, the knowledge of its rights charged to appellant obviated the necessity of notice to the debtor under the Mississippi rule. *First National Bank* v. *Monroe County,* 131 Miss. 828 at 849.

Construing all the parts of the contract together and relating them to each other, the contract manifestly is a tri-lateral contract between the county, acting through the highway commission, Parker and appellant, wherein the county agrees to pay the stipulated compensation to Parker for furnishing materials and labor and paying for the materials and labor furnished, and for executing the work, eighty-five per cent on estimates during the progress of the work and the balance upon completion of the work and maintenance; Parker agreed to furnish and promptly pay for the material and labor furnished and execute the work contemplated as a condition to becoming entitled to the compensation; and appellee agreed to do so if Parker did not.

The courts refer to such contracts as tri-lateral even when the bond is not expressly made part of the contract under the rule that the bond is to be read as part of the contract. *National Surety Co.* v.*Hall-Miller Decorating Co.,* 104 Miss. 626 at 632.

Courts of the highest respectability have passed upon the rights of sureties upon the bonds of public contractors given under the requirements of statutes like the Mississippi statute, under contracts like the one here involved, where the sureties did not complete the contracts and had been called upon to pay furnishers only, to the "reserved fund," arising thereunder as against a bank holding an assignment thereof from the contractor for moneys advanced to him for carrying on the work and paying for labor and material, and have held them superior to those of the assignee.

These cases support every element of our theory that the assignee is charged with notice of the surety's rights by the contract; that there need be no legal obligation on owner to withhold moneys to pay furnishers, the moral obligation being sufficient; that there need be no express provision in the contract for the reservation, the owner having the right as an incident of the default, to which the surety is entitled to be subrogated; that a bank advancing money is a volunteer and acquires no equities by subrogation that rise superior to the surety's rights; that the fact that the retainage has not been paid and is in hand is the equivalent of having reserved it; and that the reservation is as much for the indemnity of the surety as for the owner, being part of the principal's contract with surety as well as owner. *Hennigsen* v. *U. S. F. & G. Co.* (1908), 208 U. S. 404, 52 L. Ed. 547; *Hardaway* v. *National Surety Co.* (1909), 211 U. S. 552, 53 L. Ed. 321; *First National Bank* v. *Pesha* (1916), 99 Neb. 785, 157 N. W. 924; *Wasco County* v. *New England Equitable Ins. Co.* (1918), 88 Ore. 465, 172 Pac. 126, Ann. Cas. 1918-E 656; *Mass. Bonding Co.* v. *Ripley County Bank* (1921), — Mo. App. 569, 237 N. W. 182.

The case of *Prairie State National Bank,* 164 U. S. 227, 41 L. Ed. 412, was one in which the surety had completed the contract, but Judge WHITE indicated that they would have been entitled to the benefit of the retainage though they had not. *In Re Schofield,* 215 Fed. 45, the court adverts expressly to the fact that the absence of an express provision for withholding funds and applying them to the payment of furnishers' claims is not necessary to the right so to do under the supreme court's ruling in the Henningsen case.

*First National Bank* v. *Monroe County,* 131 Miss. 828, is not applicable. The court there had reference to the retention of "progress payments" which, in that case, we were seeking to have withheld to pay furnishers claims, and has no reference to the right to withhold the "reserved fund" to pay furnishers who are unpaid upon completion of the work. This court in that case was carefully distinguishing the progress payment from the reserved fund and the right of the contractor to assign the progress payments when he could not transfer the reserve funds because they were reserved. The court was distinguishing between the eighty-five per cent which was to be paid during the progress of the work and the balance and was justifying the contractor's assignment of an eighty-five per cent payment to the bank on the ground that the contract having provided for the payment of that percentage during the progress of the work, it was presumable that it was in recognition of the contractor's need for money to carry on his work and was intended to give him the right to assign that fund to raise the money for his work; and, therefore, that the right could not be denied in the absence of an express provision to the contrary.

It is well settled that the money lent by a bank and used to pay for labor and material gives the bank no right to recover under the contractor's bond. The leading case on the subject is *U. S.* v. *Rundle* (C. C. A.), 107 Fed. 227.

The Washington cases which counsel refer to and which this court referred to and quoted from in the Monroe County case likewise had reference to the assignment of progress payments, not the reserved fund. The courts in that state, beginning with the pioneer case, *Dowling* v. *Seattle,* 22 Wash. 592, 61 Pac. 709, hold that the progress payments are in a very different attitude from the reserved fund and indicate that the reserved fund, because it is reserved, is not subject to assignment.

*Hipwell* v. *National Surety Co.,* 130 Iowa 656, 105 N. W. 318, cited by appellant, is in conflict with the authorities cited by us; but in that case does not square with many elemental principles and it is hardly conceivable in any event that this court would follow that one case against the well-considered cases that we have cited, particularly the decisions of the supreme court of the United States, constituting the weight of authority.

There are very many other decisions upholding the right of a surety in the percentage as against an assignee, but in those cases the surety had either finished the contract or the contract contained express provisions for withholding funds and paying furnishers. These cases, however, are in principle applicable, we submit, because at least the principle we are contending for is the principal ruling there; namely, that the default of the contractor as to the performance of any obligation cast upon him by the contract, entitled the surety to be subrogated to all rights of the obligee-creditor and its principal, the contractor, as of the date of the contract of suretyship. *Prairie State National Bank* v. *U. S.,* 164 U. S. 227, 41 L. Ed. 412; *Derby* v. *U. S. F. & G. Co.* (Ore.), 169 Pac. 600; *Maryland Casualty Co.* v. *Washington National Bank,* 92 Wash 497, 159 Pac 689; *Title Guaranty & Surety Co.* v. *First National Bank* (Wash.), 162 Pac. 23; *First National Bank* v. *School District* (Neb.), 110 N. W. 349; *Stell* v. *United Surety Co.* (Md.), 68 Atl. 601; *First National Bank* v. *City Trust Safe Deposit & Surety Co.* (C. C. A.), 114 Fed. 529; *O'Neal Engineering Co.* v. *First*

*National Bank* (Tex.), 222 S. W. 1091; *Wills* v. *Philadelphia,* 270 Pa. 47, 112 Atl. 868.

The surety's rights here date back to the contract and one who took an assignment from the contractor was necessarily charged with notice of the contract and the rights therein of the county and the surety, and, consequently, took subject to the rights of the county and surety, and cannot claim against the surety when it had suffered loss by paying furnishers.

The decree of the chancellor should be affirmed.

*H. B. Greaves,* in reply, for appellant.

It is to be noted that the claim of the Guaranty Company is by reason alone of having paid the sub-contractors' claim for work and labor done, and the Guaranty Company seeks to claim, not only as subrogated to the sub-contractors, but to the rights of Parker and the county.

The contention that the relations are tri-partite is unfounded. *Peck-Hammond* v. *Williams,* 77 Miss. 824. Note particularly that the provisions in the contract in that case, the performance of which was secured by bond, are declared to be for the benefit of the city alone and do not entitle the materialmen to priority of payment over the builder's assignee in case of the builder's insolvency and insufficiency of the balance under the contract for the payment of both claims. The attention of the court is called to the most excellent brief of Alexander & Alexander in 77 Miss. 428, upon which the court acted in deciding the case.

Furthermore, *National Surety Co.* v. *Hall Decorating Co.,* 104 Miss. 626, expressly holds, as chapter 217, Laws of 1918 requires, that this contract is for the benefit of the materialmen and laborers and that being for their benefit, it is enforcible by them and that it was not *ultra vires* for a board of trustees to compel the contractor to pay these claims, and to give bond therefor, with sure-

144 Miss.—38.

ty, to pay the claims of the materialmen, thereby making the debt, not that of the county, as held in the Peck-Hammond and National Surety Co. cases, but its covenant by the surety company to pay its own debt, and being a covenant to pay its own debt, by the terms of its contract, no subrogation could arise. *Underwood* v. *Bank*, 144 U. S. 676, 36 L. Ed. 590.

The claim of subrogation, by reason of paying the claims of materialmen has no foundation, for materialmen, as held in the *Monroe County case,* 95 So. 726, and cases cited therein, referred to in our brief, have no lien in cases of public work and there is nothing to predicate subrogation in equity by reason of paying such claims.

Argued orally by *H. B. Greaves* and *Marcellus Green,* for appellant and *W. M. Hall,* for appellee.

McGowen, J., delivered the opinion of the court.

This is an appeal from the chancery court of Yazoo county, wherein the board of supervisors of said county filed its bill of interpleader wherein it is alleged that on account of its contract with J. R. Parker for the construction of the Benton and Moore ferry road there was due and owing on such contract from said county the sum of seven thousand seven hundred eighty-five dollars and eighteen cents, and the laborers, materialmen, and their assignees, on the one hand, and the Canton Exchange Bank, another defendant, were  each claiming said fund.

It further set up that the guaranty company was surety on the bond executed with the contract by Parker, and that the surety company claimed that in the application for the bond Parker assigned and set over to the said surety company all the money due him or to become due him under said contract, and, further, that the surety company claimed that laborers and materialmen were

undertaking to hold it liable for labor and material and were claiming that said balance due under the contract should be turned over to it by reason of such assignment. There was set forth a list of claims for material and labor furnished on account of said contract to the amount of more than seven thousand dollars. Other claims were set up in the bill which it is unnecessary to detail here.

The county further stated that it had no personal interest in the subject-matter of the controversy and was indifferent to the contention between the claimants, and paid the seven thousand seven hundred eighty-five dollars and eighteen cents balance due under said contract, into court, prayed process, prayed that the respective claims be adjudicated and that the rights of the several claimants be adjudicated by the court.

It appears that after the filing of the bill and other steps had been taken therein the case was removed to the Jackson division of the United States district court for the Southern district of Mississippi, and was by that court, on June 3, 1924, remanded to the chancery court of Yazoo county.

Briefly stated, the Canton Exchange Bank in its answer and cross-bill admitted that the several laborers and materialmen were claiming the money, but set up that it was entitled to the funds by virtue of an assignment to it made by J. R. Parker, the contractor; that said assignment of the amount due under the contract was made for advances to said Parker with which to construct the road; and that at the March meeting, 1922, notice of said assignment was served on the board of supervisors, accepted by them, spread upon their minutes, and recorded.

The assignment in form was an assignment of all the retainage on that date in the hands of Yazoo county or that "hereafter may accrue to me to be held by the board of supervisors of Yazoo county on my contract for roads, or part of the road from Moore's ferry towards Yazoo City of which I am contractor." And the

assignment further directed the board of supervisors to pay all such funds to the assignee of the bank, and was dated February 18, 1922.

The bank claimed that there was due on account of said assignment of said retainage fund to the bank by Parker the sum of five thousand three hundred thirty-five dollars and sixty-nine cents, including attorney's fees, it being alleged that the notes for advances made to Parker by virtue of the assignment provided for ten per cent. attorney's fees, and that the notes had been placed with an attorney for collection. Copies of the notes were attached. The bank further alleged that it relied upon the law as announced by the court allowing contractors to assign the money to be earned under such contract, on the acceptance by the board of supervisors, in making these loans.

The respondent further denied that Parker made an assignment to the United States Fidelity & Guaranty Company, denied that under the bond and contract of Parker the guaranty company as surety had any rights either by assignment or otherwise as against it which could be lawfully maintained as to the fund in controversy, but alleged that, in so far as the assignment in the application of Parker to the guaranty company is concerned, there was no notice to it of such assignment, and that same was not served on the board, or notice given the board, until the work of constructing the road was practically completed, and that the guaranty company had no claim on the fund which was superior to the claim of said bank, and that, as a matter of law and of equity, the bank would be entitled to preference as to said fund; and the cross-bill sought to enforce the assignment hitherto referred to, and prayed that a decree be entered awarding it priority of payment out of the retainage funds. The contract was made an exhibit to the answer and cross-bill, together with the copy of the assignment and copy of the notes.

Parker, the contractor, filed a separate answer admitting substantially the facts set up in the answer and cross-bill, and prayed that the bank be awarded payment of its claim and that he was entitled to some additional sum. He made a copy of the bank's assignment an exhibit to his answer.

The United States Fidelity & Guaranty Company filed its answer admitting the contract, admitted that Parker performed and completed the work under such contract, admitted that payments were made on monthly estimates to Parker, admitted that laborers and materialmen were claiming an interest in the fund, admitted that the Canton Exchange Bank was claiming the fund by virtue of the assignment heretofore mentioned, but denied that the bank had any assignment valid or binding in so far as it sought priority over the right and claim of the surety company, set up that the bond was executed by virtue of chapter 217 of the Laws of Mississippi of 1918, and was conditioned for the performance of said contract and payment of all persons furnishing said Parker with material or labor in the course of the performance of such work, as provided by said statute. A copy of the complete bond and complete contract was filed as exhibit to its answer.

The guaranty company further averred that the contract contemplated and required the retention of fifteen per cent. of the monthly estimates; that the said fifteen per cent., to which we shall refer hereafter as "retainage," was for its security and protection against default under said contract with reference to any of its principal duties and obligations thereunder.

The guaranty company averred that the amount paid in by the county with its bill of interpleader alleged to be due to Parker was a part of said final estimate and retainage, and alleged that there was some five thousand three hundred dollars due by the county on the estimate of engineers to Parker, that it was the duty of the county to retain fifteen per cent. of the amount due Parker, that

the entire amount of the contract was one hundred thousand two hundred one dollars and twenty-seven cents, fifteen per cent. of which was fifteen thousand thirty dollars and nineteen cents, that a difference of more than seven thousand dollars was illegally paid to the Canton Exchange Bank by the county, and alleged that the county should be required to account to it for this difference.

The guaranty company further averred that it had paid various amounts to various and sundry subcontractors, materialmen, and laborers, and that it might be called upon to pay others, and that this retainage fund was for its protection against any unperformed part of said contract and bond, that all assignees of said Parker are charged with notice of its prior rights, and that the claim of the Canton Exchange Bank as assignee was subordinate to the claim, right, and title of the guaranty company.

It averred that Parker did not pay all persons having performed labor and furnished material in the construction of the road; set up a list of payments made by it, aggregating ten thousand seven hundred seventeen dollars and thirty cents, all of which sums it alleged were due for material furnished and labor performed before and at the time of the completion of the work by the principal, Parker; that it, the guaranty company, was liable for said sums under the statute and this bond, and that it had paid on account of said liability such claims, amounting in all to ten thousand seven hundred seventeen dollars and thirty cents and by such payment had made absolute its right to the fund paid in said court.

The proof in this case was confined to the exhibits and agreed statements of facts. To sum up and state the case succinctly: The county let a road contract to Parker. Parker executed a bond for the faithful performance of that contract in accordance with the plans and specifications, the plans and specifications being made a part of the bond and a part of the contract, and the bond being made a part of the contract; and the bond further stipu-

lated under chapter 217, Laws of 1918, that the principal, Parker, would pay all the agents, servants, and employees and persons furnishing the principal, Parker, with material and labor in the course of the performance of said work, and carry out to the letter each and all of the stipulations and obligations of the contract. The fund involved here was embraced within the fifteen per cent. stipulated to be retained under the contract, called "retainage." The bank claimed the fund by virtue of its assignment from the date it served notice on the county, the debtor, and the guaranty company claimed the fund by virtue of its equitable subrogation to the rights of the county in the fifteen per cent., because it had paid the laborers and materialmen on its bond obligation dated September 6, 1921.

We think it unnecessary to set out the contract and bond in detail here, but will say that, except for names and amounts, this record is the same in its essential details as the record in the case of *First National Bank* v. *Monroe County*, 131 Miss. 828, 95 So. 727, except that in the instant case the fund in controversy is the "retainage" fund, and in the Monroe county case the lawsuit arose between the assignee and the surety company as to the "progress" fund. It is conceded in this case that the bank made its advancements in aid of the construction of the road, and it is conceded that the guaranty company had paid claims of laborers and materialmen in excess of the amount of the fund (now agreed to be correct) paid into court by Yazoo county on its interpleader.

The precise question presented to us for decision is whether or not under the facts stated above the bank is entitled to the funds by virtue of its assignment, notice of which was given the debtor, the county, in due time, or whether the guaranty company, having paid the laborers and materialmen, which its principal has failed to pay, is entitled by subrogation to the rights of the county to have this fund applied for its protection in the carrying out of the contract of its principal in the payment of

laborers and materialmen incurred by Parker in the construction of the road.

In the case of *First National Bank* v. *Monroe County, County, supra,* this court set out excerpts from the contract and from the bond, and there decided in a similar contest as to which of the two, the assignee of the contractor or the surety of the contractor, was entitled to the balance of the "progress" fund then unpaid and due from the county. After a statement of the case and a review of the authorities this court reached the conclusion that, as to the "progress" fund, by virtue of a valid and binding assignment fully executed, the contractor's assignee was entitled to the "progress" fund unpaid and owing from the county as against the surety company. But in that case this court distinctly refrained from any decision as to which of the two would be entitled to the "retainage" fund, and the court, speaking through Judge COOK, said, "The retained percentages are not here involved, and as to that feature we express no opinion, but, as to the amount which the contract provided should be paid to the contractor monthly, we think the doctrine herein announced is in nearer accord with reason and sound policy," and then proceeds to hold that the assignee is entitled to the "progress" fund.

In addition to the specific provisions of the contract, section 363, Code of 1906 (Hemingway's Code, section 3736), among other things, provides:

"In all cases of public work let by the board of supervisors where the contract price exceeds five thousand dollars the board may contract so as to provide for making partial payment to the contractor therefor as the work progresses, but in no case shall such partial payments exceed eighty-five per cent. of the value of the work done and material used in the performance of the contracts," etc.

Section 361, Code of 1906 (Hemingway's Code, section 3734), provides how contracts for public work may be made, and applies to all contracts made by the board of

March, 1926] Canton Exch. Bank v. Yazoo Co. et al. 601

144 Miss.]                    Opinion of the Court.

supervisors in excess of fifty dollars not otherwise spe-
cifically provided, provides for a bond, and that the bond
shall be conditioned for the prompt, proper, and efficient
performance of the contract.

Chapter 217, Laws of 1918, is a provision that the
bond shall provide for the prompt payment of all labor-
ers and materialmen, and provides that the usual bond
should be executed.

As we have before set out, the contract provided for
progress payments, and provided further for the re-
tention of the retainage fund in the following language:

"*Maintenance.*—The contractor will be required to
maintain the road in first class condition for thirty days
after it is completed, and fifteen (15) per cent. of the
final estimate will be retained by the county or district
to enforce this requirement, except that the state high-
way engineer may in his discretion release the contrac-
tor from the further maintenance of sections of the road,
not less than two miles in length, which have been satis-
factorily maintained under traffic for at least thirty
days."

The chancellor in a written opinion awarded this re-
tainage fund to the guaranty company, holding it en-
titled to same by virtue of its equity of subrogation, and
the bank, the assignee, appeals here.

The appellant contends throughout the several briefs
filed in this case that it is covered and controlled in its
entire aspect by the case of *First National Bank* v. *Mon-
roe County* mentioned in the statement of facts, and in
addition it urges that the recitals of the proposals for
the bond were, in effect, an attempt on the part of Parker
to make a legal assignment of these funds to the guaran-
ty company absolute in its nature, including not only
these funds involved here but all the property and money
used and acquired in and about the contract, and, having
undertaken to take an assignment and thus acquire the
title, that the guaranty company could not thereafter set
up an equitable title derived by subrogation, the guaran-

ty company never having served notice on the county or on the bank until long after the bank had served its notice and after the breach or failure to pay these laborers had occurred in Parker's "proposal for bond" mentioned above. After assigning all funds, progress and retainage, to the guaranty company as indemnity or protection, conditional and effective only on Parker's breach of the contract, there is this language:

"That the said company, as surety on said bond, as of this date, shall be subrogated to all of our rights, privileges, and properties as principal and otherwise in said contract, and said principal does hereby assign, transfer, and ·convey to said company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to said principal at the time of such breach or default, or that may thereafter become due and payable to said principal on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such moneys and the proceeds of such payments and properties shall be the sole property of the said company, and to be by it credited upon any loss, damage, charge, and expense sustained or incurred by it as above set forth under its bond of suretyship."

It is well settled in this state that in a contest between several parties claiming legal title to the fund assigned, that he who first brings same to the notice of the debtor of the assignee has priority. *Mathews* v. *Hamblin,* 28 Miss. 611; *Lumber Co.* v. *Newcomb,* 79 Miss 462, 30 So. 608; *First National Bank* v. *Monroe County,* 131 Miss. 828, 95 So. 727. So that as between the two assignments on this legal phase the bank's rights were not affected by the effort to assign this fund in the proposal made by Parker to the guaranty company for his bond. We might say in passing that the guaranty company made no effort to interfere with Parker in his handling of the progress money in this case.

Counsel for appellant argue strenuously that the guaranty company by its service of notice on the county of its "proposal for bond" rendered such assignment subordinate to the bank's assignment. We think it is clear that it only presented the paper as additional evidence that the contractor conceded the right of the guaranty company to be subrogated to the county's rights in this contract and in this "retainage" fund, and we do not think there is any merit in that contention, for in Parker's written "proposal for bond," and in the notice of the guaranty company to the supervisors, there was distinct recognition of this claim of the guaranty company to an equity of subrogation in and to this "retainage" fund.

However, the serious question raised in this case is, whether or not under the language of the contract, and the provisions of chapter 217, Laws of 1918, and under sections 361 and 363, Code of 1906 (Hemingway's Code, sections 3734, 3736), the county has any right in this retained fund when the work has been completed in every detail according to the plans and specifications and contract, and retained for thirty days for the proper maintenance of the completed road. To put it in simpler form, when every detail of the work has been completed and there remains all or a part of the fifteen per cent. "retainage" fund in the hands of the county, can the county legally pay this fund or any part of it to any one save the contractor or to his order, even though the contractor may still owe for material used and labor performed in the construction of the roads?

If, as stated by counsel for appellant, the case of *First National Bank* v. *Monroe County, supra,* is controlling and decisive here, then, of course, we have but to cite that case, or that part of the decision which is controlling, and rest content. But a critical examination of the case discloses that no effort was made in the statement of the case, in the reasoning of the case, in the authorities cited, or in the conclusion reached, to settle the question of

whether or not there is an equity of subrogation in the surety whose principal had failed to pay the laborers and materialmen, so that, in our opinion, the court expressly pretermitted expressing any opinion on this question as to the retainage fund, and only held that there was no equity of subrogation to the surety on the bond in the progress fund as against the assignee of the contractor. No other thing is adverted to or decided. Nor is the case considered with reference to the question now under consideration.

It must be borne in mind that Laws of 1918, chapter 217, is not the only statute controlling this contract—a road contract with more than five thousand dollars involved. Section 63, Code of 1906 (Hemingway's Code, section 3736), permits "progress" payments, but requires a retainage fund of fifteen per cent., as follows:

"In all cases of public work let by the board of supervisors where the contract price exceeds five thousand dollars the board may contract so as to provide for making partial payments to the contractor therefor as the work progresses, but in no case shall such partial payments exceed eighty-five per cent. of the value of the work done and material used in the performance of the contracts, to be estimated by some competent person employed by the board to superintend such work, and not until the superintendent shall furnish to the board such estimate, in writing, on his oath (as to the correctness of such estimate), which estimate, with the oath annexed thereto, shall be filed with and recorded in the minutes of the board," etc.

It is elementary that the assignee obtains no greater right in the thing assigned than was possessed by the assignor, and the disposition of the retainage fund in this case must be determined by the relative rights of the parties to this litigation, considering the legal as well as the equitable rights.

If the guaranty company acquired any right to this fund it must be under the doctrine of the well-established

rule governing equitable subrogation, which originated, if at all, on the day of the execution of the bond of the contractor by the guaranty company.

It must be remembered that it has been the law of this state since the enactment of chapter 141, Laws of 1904, that the board of supervisors was to make contracts providing for partial payments to the contractor as the work progressed, not to exceed eighty-five per cent. of the work at actual value. Then this chapter 141 became section 363, Code of 1906 (Hemingway's Code, section 3736), clearly showing that there was a purpose to retain fifteen per cent. for the protection of the county in securing the completion of the contract according to its terms.

When we consider the requirements as to bond and as to what the bond guaranteed in the statutes embraced in the chapter on boards of supervisors of the Code of 1906, hitherto cited, and which the Laws of 1918, chapter 217, can in no sense be urged to have repealed, but only enacted further obligations in the bond, the contract was not complied with until all the obligations of the contract and bond were complied with. The requirements of chapter 217, Laws of 1918, are a part of the bond, which is a part of the contract, and postpones the due date of the retainage fund until the road work shall have been open for inspection for thirty days longer than would have been required by section 363 of the Code of 1906.

In the court below the chancellor in his written opinion based his decision for the guaranty company squarely on the old, well-recognized doctrine of equitable subrogation, holding in effect that, where the contract and bond were entered into in this case, the right of equitable subrogation in the retained percentage involved here was vested in the guaranty company and dated back to the date of the bond and contract, and that the retained percentage was for the benefit of the surety as well as of the county.

We have already noticed that counsel for appellant contend that the case of *First National Bank* v. *Monroe County* settles this case, and have answered that in our opinion the question of retained percentages was entirely eliminated from that decision. Nor can it be argued that by analogy the same rule applied to the ''progress'' money to which the contractor, the principal, has the right, is analogous to and is controlled by the same principle as the retained percentages to which the contractor by law and by contract has not a right until the entire contract in every detail is completed in accordance with its terms and the law.

Counsel cite the case of *Peck-Hammond Co.* v. *Williams,* 77 Miss. 824, 27 So. 995, as authority for the proposition that the bank, the assignee, is entitled to the money, the retained percentage, in this case as against the surety on his contractor's bond. There are only about eleven lines in that opinion, and an examination of the statement of facts and the briefs of counsel show that the contest as viewed by the court was one between a preferred creditor (by assignment of the fund) and a general or nonpreferred creditor, and the question of equitable subrogation did not and could not have entered into that decision, nor were involved the surety's rights as against the assignee.

In *National Surety Co.* v. *Hall-Miller Decorating Co.,* 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.) 325, also cited by appellant, Judge COOK delivered the opinion of the court, and simply held that the provision requiring the contractor to pay all material and labor claims was not unreasonable or improper, was plain and unambiguous, and that the provision did not render the bond or contract *ultra vires.*

Counsel for the appellant further rely upon the case of *Hipwell* v. *National Surety Co.,* 130 Iowa, 656, 105 N. W. 318, which case sustains the theory of the appellant that the assignee here, the bank, would be entitled to collect the retained percentage fund to the exclusion of

the guaranty company on the bond, and is the strongest case for that view to which we have had access. But the case recognizes the fact that, the retained percentage was for the benefit of the surety as well as the building committee, and seems to decide the case on the theory that the contractor, the principal in the bond, might assign the fund so as to deprive the surety of his right of equitable subrogation because nothing would remain. A statement of the position assumed by the court displays the weakness of the position just assumed, because we do not think there is any break in the authorities that the subrogation begins at the time the surety assumes the obligation under which the thing subrogated is deposited as security or arises.

In an early report of this court the doctrine of equitable subrogation was not only recognized but commended by the High Court of Errors and Appeals.

In *Gowing* v. *Bland's Administrators and Heirs,* 2 How. (Miss.) 813, Mr. Justice PRAY, as the organ of the court, said:

"Having thus ascertained the rights of executor or administrator when discharging the debts of his testator or intestate, we will inquire what are the rights of one who pays those debts as the surety of the executor or administrator? In [*Enders* v. *Brune*], 4 Randolph (Va.) 444, we find the question thus emphatically decided: 'The surety is entitled to every remedy, which the creditor has against the principal debtor, to enforce every security; in short, to stand completely in the place of the creditor.'

"If the authorities here cited are to be relied on, and their character is too elevated to be questioned, they dispose of the whole case. . . . .

"The doctrine of substitution is not regarded in equity, as founded on contract, but as the offspring of natural justice, and courts should rather incline to extend than restrict the operation of a principle so elevated and pure."

This principle is reinforced in the cases of *Conway* v. *Strong,* 24 Miss. 665; *Bowen* v. *Hoskins,* 45 Miss. 183, 7 Am. Rep. 728; *Osborn* v. *Noble,* 46 Miss. 449.

The supreme court of the United States, as well as the circuit courts of appeals, has frequently applied the the doctrine of equitable subrogation to the state of facts which we have before us, as have the courts of last resort of Arkansas, Maryland, Montana, Minnesota, Nebraska, North Carolina, North Dakota, Oregon, Pennsylvania, Texas, and Ohio.

In the case of *Prairie State National Bank of Chicago* v. *United States,* 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, Sundberg had entered into a contract to erect a public building at Galveston, Tex. Hitchcock was the surety on his bond. The president of the bank furnished the contractor with funds which it was understood and asserted were used by the contractor in doing the work. The contractor drew an order in favor of the bank for the amount reserved, wherein M. Justice WHITE said:

"Under the principles thus governing subrogation, it is clear whilst Hitchcock was entitled to subrogation, the bank was not. The former in making his payments discharged an obligation due by Sundberg for the performance of which he, Hitchcock, was bound under the obligation of his suretyship. The bank, on the contrary, was a mere volunteer, who lent money to Sundberg on the faith of a presumed agreement and of supposed rights acquired thereunder. The sole question, therefore, is whether the equitable lien, which the bank claims it has, without reference to the question of its subrogation, is paramount to the right of subrogation which unquestionably exists in favor of Hitchcock. In other words, the rights of the parties depend upon whether Hitchcock's subrogation must be considered as arising from and relating back to the date of the original contract, or as taking its origin solely from the date of the advance by him."

The opinion, after quoting numerous authorities and analyzing the English cases, concludes with this statement (17 S. Ct. at page 147 [164 U. S. 239]):

"Applying the principles, which are so clearly settled by the foregoing authorities, to the case at bar, it is manifest that if the transaction in February, 1890, by which the Prairie Bank acquired its alleged lien on the fund possessed the effect contended for by the bank, *it would necessarily operate to alter and impair rights acquired by the surety under the original contract.* (Italics ours.)

"Sundberg & Company could not transfer to the bank any greater rights in the fund than they themselves possessed. Their rights were subordinate to those of the United States and the sureties. Depending, therefore, solely upon rights claimed to have been derived in February, 1890, by express contract with Sundberg & Company, it necessarily results that the equity, if any, acquired by the Prairie Bank in the ten per cent. fund then in existence and thereafter to arise was subordinate to the equity which had, in May, 1888, arisen in favor of the surety Hitchcock."

It will be noted that Chief Justice White was of the opinion that the right of the surety to subrogation related back to the date of the original contract, and of course a party could not partake of the fruits of a contract without being held to have notice of the claim of the surety company to its equity of subrogation in this retained percentage fund arising from the identical contract. We think the reasoning is sound, and we are persuaded to follow it in this case.

In the case of *Title Guaranty & Surety Co.* v. *First National Bank,* 94 Wash. 55, 162 P. 23, the court sustains the surety's equity of subrogation in the fifteen per cent. retained as against a bank which had taken an assignment of the particular fund. True it is that in this case the actual labor and work of the contract had not been fully performed, but the surety's right was based upon the equity of subrogation, and, as said by Chief Justice White, relates back to the date of the original contract, "which could not be impaired or altered by a subsequent assignment by the contractor."

The same court in the case of *Northwestern National Bank* v. *Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 P. 473, Ann. Cas. 1918D, 644, held that where there was no specific percentage fund retained the assignment of the bank was superior to the claim of the subrogation by the surety on the contractor's bond. But the same court in the case of *Maryland Casualty Co.* v. *Washington National Bank,* 92 Wash. 497, 159 P. 689, said:

"In the *Liebes* case [*State ex rel. Bartelt* v. *Liebes,* 19 Wash. 589, 54 P. 26], and in *First Nat. Bank* v. *Seattle,* 71 Wash. 122, 127 P. 837, we announced a trust to creditors in a contractor's reserved balance. Here, holding the surety liable for the contractor's debts by a contract supplementing statutory obligations, we have a surety's right of subrogation to that balance should he be compelled to pay the principal's creditors, and of his right to prevent the dissipation of the fund. In this portion justice must rigorously protect the surety. His expectation when he goes on the bond is plain; the principal may squander eighty per cent., leaving the surety at the mercy of the creditors, but there is at least twenty that will be applied to the creditors in spite of him. This amount, originally reserved to protect merely the creditors, is a collateral security of the principal available to the paying surety."

Chief Justice MARSHALL, speaking for the Ohio court, on March 16, 1926, in the case of *State* v. *Schlesinger,* 151 N. E. 177, at page 179, reviews the authorities pro and con, and clearly, cogently, and convincingly, establishes that the surety is subrogated to the rights of the state and takes priority over the assignee of the contractor, saying:

"All the foregoing cases quite clearly and uniformly support the claims of the surety in the instant case. As against this long line of authorities we are cited by counsel for the bank to the case of *Puget Sound State Bank* v. *Gallucci,* 82 Wash. 445, 144 P. 698, Ann. Cas. 1916A, 767,

but a careful examination of that case discloses that it was decided upon the peculiar language of the statute governing such matters in force at that time in the state of Washington. By virtue of that statute, and more especially by virtue of the contract made pursuant to that statute, the surety became obligated, not only to pay the claims of laborers and materialmen, but to pay 'all just debts, dues, and demands incurred in the performance of said work.' Whatever force that case might have had as an authority in the instant case, much of that force was destroyed by the facts that at a subsequent date the legislature of the state of Washington amended the law, leaving out the words above quoted, thereby indicating that it was not the intention of the legislature, in the declaration of a sound public policy for that state, to destroy the rights of sureties to subrogation upon public contracts in that state.''

And he further said:

''It is urged on behalf of the bank that by reason of its assignment of the contract it becomes entitled to all the security of the contract. Even if this should be admitted, it adds no strength to the position of the bank. Conceding that the bank by the assignment had transferred to it all the value of the contract, it turns out in this particular case that the contract had no value. Whether or not a contract has value depends upon whether the contractor made a good bid. If the contract can be executed at a profit, it has value. If it is executed at a loss, it becomes a liability. And this is perhaps the best answer to the contentions of the bank—that it had transferred to it what turned out to be a liability instead of an asset.

''It may clearly be deduced from all the foregoing authorities, and it must further be resolved upon principle, that the right of subrogation in the surety operates as an equitable assignment, and that, inasmuch as the surety is a party to the original contract, such equitable assignment takes priority over any assignment, legal or equitable, which may be given by the contractor to any third

party who enters the transaction after its inception.
. ''It has further been urged on behalf of the bank that it is entitled to be subrogated, and therefore entitled to claim an equitable assignment of the claims of laborers and materialmen who were paid by the funds loaned by the bank to the contractor. This question was fully met in the case of *Illinois Surety Co.* v. *City of Galion* (D. C.), 211 F. 161, where the court determined to the contrary. Laborers and materialmen who were paid by the money loaned by the bank to the contractor had no liens and the bank cannot therefore be said to have acquired existing and vested liens. We therefore hold upon principle, as well as authority, that the surety company must prevail.''

We think in this case that Parker, the contractor herein, could not have required the county to pay him the reserved percentage until he had discharged his obligation to the county and complied with his contract, which he failed to do in the payment of materialmen and laborers, and which his surety carried out for him after his default. In this state of case the assignee, the bank, could not acquire any right higher or superior to the claim of the assignor, Parker, and neither of them could have enforced payment of this retained percentage until the contract had been complied with. The bank in the payment of its money was a mere volunteer in paying material and labor claims, while the surety company at the inception of the contract, had the retained percentages as a part of the contract to which it could look —as that part which could not be wasted or dissipated by the contractor—and so likewise the bank in law was advised that the surety company was entitled to be equitably subrogated to the rights of the county and to the rights of the contractor, and, as we conceive this case, no amount became due to Parker unless and until his contract with the county had in all respects been fully complied with in all of its details for which he and his surety were bound.

Counsel argue that the authorities quoted above all apply to cases where the courts decline to recognize the assignment by the creditor of a particular fund. The answer is this—that the same rule announced herein is followed and approved in the case of *Mass. Bonding Co.* v. *Ripley County Bank,* 208 Mo. App. 560, 237 S. W. 182; and the courts of Missouri determine priority of assignments just as they are determined by us in this state.

We think the guaranty company, having paid out more than the amount of the percentage retained by Yazoo county in this case, is entitled, under the doctrine of equitable subrogation applied to its bond contract at its inception, to collect this retained percentage fund in a contest with the bank which voluntarily paid out its money to laborers and materialmen and claims by virtue of an assignment of the percentage fund retained, duly served on the county in ample time in manner and form required under our decisions, to complete an assignment of the funds. The court below so held.

We want it understood that the conclusion here announced applies only to the "retainage" fund, and we adhere to the rule announced in the case of *First National Bank* v. *Monroe County, supra,* as to the progress fund there involved, which has no application to the "retainage" fund or retained percentage.

*Affirmed.*