# Davis Co., Inc., *v.* D'Lo Guaranty Bank.

(In Banc.   Jan. 11, 1932.)

[138 So. 802.   No. 28794.]

Butler & Snow, of Jackson, for appellant.

831

832

833

**F. W. Bradshaw** and **Flowers, Brown & Hester,** all of Jackson, for appellee.

836

Argued orally by **Geo. Butler**, for appellant, and by **Clyde Hester**, for appellee.

**Cook, J.**, delivered the opinion of the court.

This cause was originally submitted to and decided by Division A of the court, but upon suggestion of error the opinion then delivered was withdrawn, the judgment entered was set aside, and the cause was remanded to the docket for hearing before the court in banc. Upon further consideration of the cause by the court in banc the following was adopted as the opinion of the court:

The Davis Company, Inc., entered into a contract with Hinds county, Mississippi, whereby it obligated itself to furnish the material and labor, and to perform all the work necessary to repair a certain bridge across Pearl river, for the sum of two thousand seven hundred fifty dollars, to be paid upon completion of the work in

accordance with plans and specifications made a part of the contract. It thereupon entered into bond, with the United States Fidelity & Guaranty Company as surety, in the sum of three thousand one hundred fifty dollars, to guarantee the faithful performance of the contract, and the prompt payment of all persons supplying labor and material therefor; this bond expressly providing that in case of default the surety should be subrogated to the rights of the principal in all deferred payments or retained percentages due the principal at the time of such default. The contract contained no provision for partial or progress payments, but provided for the payment of the entire contract price upon the satisfactory completion of the work.

Shortly after the execution of this contract with the county, the Davis Company, Inc., entered into a contract with M. B. Dabney, whereby it sublet the work which it had contracted for to the said Dabney, for ninety per cent of the amount to be received by it under its contract with the county; and Dabney, on his part, contracted and agreed to furnish all necessary labor and material; and to do the work according to the plans and specifications made a part of the contract between the Davis Company, Inc., and the county. To guarantee the faithful performance of his contract with the Davis Company, Inc., Dabney entered into bond with G. M. Welch and J. B. Graves as sureties, in the penalty of three thousand one hundred fifty dollars, conditioned that he would faithfully perform all the terms and conditions of his contract with the Davis Company, Inc., and would promptly make payments to all persons furnishing labor and material under the contract, and would hold the Davis Company, Inc., harmless under its contract.

Upon the execution of the contract between Dabney and the Davis Company, Inc., Dabney executed an assignment to the D'Lo Guaranty Bank, whereby he undertook to assign and set over to the said bank the proceeds

of the contract between him and the Davis Company, Inc., and a copy of this assignment was delivered to the Davis Company, Inc., and it thereupon wrote the bank as follows: "I hereby acknowledge the order of M. B. Dabney to pay you all estimates, as agreed. The Davis Company, Inc., by T. R. Davis, Secretary."

Thereupon Dabney entered upon the performance of the contract, and having failed to make satisfactory progress, at the direction of the county engineer, the Davis company, Inc., placed an assistant on the work, and thereby incurred an additional expense of seventy-five dollars for the salary of this assistant. Dabney performed certain extra work to the value of twenty-five dollars, and the contract was finally completed, Dabney thereby earning two thousand two hundred seventy-five dollars and ten cents, and the county paid to the Davis Company, Inc., two thousand seven hundred seventy-five dollars, the amount of the original contract, plus the twenty-five dollars extra above mentioned.

In the meantime the Davis Company, Inc., and its surety, had received notice that Dabney had failed to pay certain persons who had furnished labor and material in and about the construction of the bridge, and the Davis Company, Inc., paid claims amounting to five hundred five dollars and forty-eight cents, and took assignments of these claims. Other small claims remained unpaid, and thereupon the D'Lo Guaranty Bank, under and by virtue of the assignment above referred to, demanded payment to it of the entire proceeds of the Dabney subcontract. The Davis Company, Inc., offered to pay to the bank the net proceeds of the said contract after deducting disbursements made to materialmen, and the seventy-five dollars paid as salary to an assistant of Dabney, if the bank would indemnify it against any outstanding claims of laborers and materialmen. This the bank declined to do, and it thereupon filed suit in the chancery court of Simpson county against the Davis

Company, Inc., and the United States Fidelity & Guaranty Company, its surety, M. B. Dabney and his sureties, Welch and Graves, and certain laborers and materialmen, who were asserting claims against Dabney.

The bill of complaint set forth the above-stated facts in detail, including the various contracts, bonds, writings, the assignment of the Dabney contract to the bank, and the acknowledgment of notice thereof by the Davis Company, Inc. It was averred that the complainant bank had advanced to the Dabney the sum of two thousand three hundred forty-one dollars and ninety cents, and that it was entitled to the entire proceeds of the Dabney contract, in preference to all of the defendants, including laborers and materialmen, and prayed that the rights of all the parties to the controversy be adjudicated.

The Davis Company, Inc., and the United States Fidelity & Guaranty Company filed an answer and cross-bill, admitting the execution of the contract between the Davis Company, Inc., and the county, and the execution of the bond, and also admitting that the Davis Company, Inc., had sublet the contract to Dabney, and required of him the execution of a bond for the faithful performance of the contract, and averring that if the bank claimed under its assignment of the contract, it assumed the obligations of Dabney in the contract, which included the payment of laborers and materialmen. They admitted that certain parties were asserting claims for labor and material, and averred the payment by the Davis Company, Inc., of certain specified claims and the assignment thereof to it. They set up all the contracts, bonds, writings, and the assignment; performance of the contract by Dabney; the employment of an assistant for Dabney at a cost of seventy-five dollars; that the contract between the Davis Company, Inc., and Hinds county, made no provision for progress payments, and that the amount of the contract price became due and payable only when the bridge was completed and accepted; that

no progress payments were made, and that the full amount of the contract price, plus extras, was allowed and paid after the bridge was completed. It was further averred that the amount of the payments accruing to Dabney under his contract with the Davis Company, Inc., stands in equity primarily charged with the payment of laborers and materialmen, and that the equities of the laborers and materialmen were superior to those of the bank, and claimed a superior equity in the funds under the theory of subrogation.

The answer and cross-bill then averred that if the cross-complainants were mistaken in the view that the rights of the bank were subordinate to the claims of laborers and materialmen, that Dabney had breached his contract, and he and his sureties were, as between them and the Davis Company, Inc., and its surety, first chargeable with such labor and material claims, and that the Davis Company, Inc., and its surety were entitled to be exonerated by the said Dabney, and Welch and Graves, his sureties. It was further set up that after paying the materialmen's claims above mentioned, and the seventy-five dollars due to Dabney's assistant, there remained in the hands of the Davis Company, Inc., the sum of one thousand nine hundred ninety dollars and fifty-two cents, which it had offered to pay to the bank upon certain conditions, which was refused; and they paid this sum into court, and prayed that all parties having claims against Dabney and his sureties, or the funds paid into court, be required to propound their claims and have their rights adjudicated.

Welch and Graves filed answers, admitting the execution of the bond as sureties for Dabney, but asserting that the bank had assumed the obligations of Dabney by reason of the assignment; that they had not consented to the assignment, and consequently their bond had become null and void. Certain laborers and materialmen intervened and propounded their claims.

Upon the final hearing of the cause, the court, in a written opinion which was made a part of the record, held that the liability of the surety on the bond of the Davis Company, Inc., to the county, was controlled by chapter 217 of the Laws of 1918, sections 5971 and 5976, inclusive, of the Code of 1930, and the case of Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1, and that since there were no progress payments, and the entire amount of the contract price of the construction of the bridge was retainage, the said surety was entitled to have all the laborer's and materialmen's claims paid out of the money paid to the Davis Company, Inc., by Hinds county, and fixed the amount of the said claims already paid, and those to be paid. As between the Davis Company, Inc., and Dabney and the sureties on his bond, the court held that the rights of the parties were controlled by chapter 128 of the Laws of 1918, sections 2274 to 2280, inclusive, of the Code of 1930, relating to purely private contracts, and that inasmuch as the Davis Company, Inc., had required Dabney to give bond for the faithful performance of his contract, Dabney could assign the proceeds of the contract, and that the rights of the D'Lo Guaranty Bank, under the assignment, were superior to those of the Davis Company, Inc., and the laborers and materialmen, and consequently that the bank was entitled to recover of and from the Davis Company, Inc., the entire proceeds of the Dabney contract, without deduction of the amount paid and to be paid by the Davis Company, Inc., to laborers and materialmen. It was held, however, that the Davis Company, Inc., was entitled to recover from Dabney, and the sureties on his bond, the amount it was required to pay for such labor and material; and a final decree was entered in accordance with the opinion of the court. From this decree this appeal was prosecuted.

Counsel for the appellant states that the principal question presented by the appeal is "whether the prin-

cipal contractor in a public building contract has the same right to subrogation as his surety upon the payment by the principal contractor of debts due laborers and materialmen contracted by a bonded subcontractor.''

The contract between the Davis Company, Inc., and Hinds county was executed under, and in compliance with, section 5971 of the Code of 1930, which requires that: ''Any person entering into a formal contract with this state, any county thereof, municipality therein, or any political subdivision whatsoever, therein, for the construction of any building or work or the doing of repairs, shall be required before commencing same to execute the usual bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor.''. This contract contains no provision for partial or progress payments, but provides for payment of the entire contract price when the bridge had been completed and accepted by the county, and the court below correctly held that in determining the right of the surety on the bond executed to guarantee the faithful performance of this contract, and the prompt payment of all persons supplying labor and material therefor, the entire contract price should be treated as retainage. The rights of the surety on the bond executed by the principal contractor in a public building contract, were fully considered by this court in the case of Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1, and it was there held that in view of the applicable statutory provisions relative to bonds of contractors engaged in public work, as against a subsequent assignment by the contractor, a surety on such a bond who has paid laborers' and materialmen's claims, is entitled to be subrogated to whatever percentage of the contract price is retained, and that the surety's right to be so subrogated arises at the time of the execution of the bond. Applying the doc-

trine announced in that case, the court below was correct in holding that the United States Fidelity & Guaranty Company, the surety on the bond of the Davis Company, Inc., in favor of Hinds county, was entitled to have all laborers and materialmen whose claims were properly before the court paid out of the money paid by the county to the Davis Company, Inc., upon the completion and acceptance of the work; and that this right was superior to any right of the assignee of said fund.

As between the Davis Company, Inc., and the D'Lo Guaranty Bank, and Dabney and his sureties, the court below held that the rights of the respective parties were controlled and fixed by sections 2275 and 2276 of the Code of 1930, relative to private contracts, and the decisions of this court construing and applying those statutes.

Section 2275 of the Code of 1930 provides that: "No contractor or master workman except as hereinafter provided, shall have the right to assign, transfer, or otherwise dispose of in any way, the contract or the proceeds thereof, to the detriment or prejudice of the subcontractors, journeymen, laborers, and materialmen as declared hereinbefore and all such assignments, transfers, or dispositions shall be subordinate to the said rights of the subcontractors, journeymen, laborers and materialmen, as well as the owner. Provided, however, that this section shall not apply to any contract or agreement where the contractor or the master workman shall enter into a solvent bond conditioned as provided for in the following section."

Section 2276 of the Code of 1930 provides, in part, as follows: "When any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may in-

sert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated in said bond; and any such person who has furnished labor or materials used therein; for which payment has not been made, shall have the right to intervene and be made a party to any action instituted on such bond, and to have his rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the rights or claim for damages or otherwise, of the obligee.''

The Davis Company, Inc., was obligated to Hinds county, under a formal contract to construct or repair the bridge in question, and the rights and liability of the parties thereto, including the surety on the bond executed to guarantee the faithful performance of the contract and the prompt payment of all laborers and materialmen, are governed by the provisions of chapter 217, Laws of 1918, sections 5971 to 5976, inclusive, of the Code of 1930, and particularly section 5971 of said Code. The Davis Company, Inc., however, did not itself perform the contract or construct the bridge, but it sublet the entire work to Dabney, and required him to execute a bond conditioned to faithfully perform all of the terms and conditions of this contract, and to promptly pay all persons furnishing labor and material under the contract, and to hold harmless the Davis Company, Inc., under its contract with Hinds county. This subcontract was between the Davis Company, Inc., a private corporation and M. B. Dabney, an individual. Dabney had

no contractual relations, either formal or otherwise, with Hinds county, and he was under no direct contractual obligations to the said county. He was under contractual obligations with a private corporation, which, in turn, was obligated to the county; and the contract between this private corporation and Dabney was purely a private contract; and this being true, the rights and obligations of the parties thereto are governed by the provisions of chapter 128 of the Laws of 1918, sections 2275 and 2276, of the Code of 1930. And, since the contract was a private one, it was permissible for the Davis Company, Inc., to determine whether or not the bond provided for by section 2276, Code of 1930, should be required of the contractor. If no such bond is required or given to guarantee the full and faithful performance of a private contract, then under and by virtue of the provision of section 2275 of the Code of 1930, the contractor has no right to assign, transfer, or otherwise dispose of the contract or the proceeds thereof to the detriment or prejudice of the subcontractors, laborers, and materialmen, and if any such assignment or transfer is made, it shall be subordinate to the rights of the owner, subcontractors, laborers, and materialmen. It is expressly provided by this statute, however, that if the contractor has given the bond provided for by section 2276 of the Code of 1930, this statutory restriction on the right to assign or otherwise dispose of the proceeds of the contract shall have no application, and in the case of Dickson v. U. S. F. & G. Co., 150 Miss. 864, 117 So. 245, 248, in discussing the effect of the provisions of the act of 1918 which appear as sections 2275 and 2276 of the Code of 1930, the court said: "Prior to the adoption of chapter 128, Laws of 1918 [Code of 1930, secs. 2274 to 2280, inclusive], money due a contractor under a building contract was not impressed with any trust or equity in favor of materialmen and laborers furnishing materials and labor going into the construction of a

building. Such funds, under the contract, belonged to the contractor absolutely, who had the right to assign or otherwise dispose of them as he saw fit, although to the prejudice of such laborers and materialmen. [Citing authorities.] But that is not true now since the adoption of that statute unless the contractor gives the bond provided by section 3 of the statute [section 2276 of the Code of 1930], quoted above. If the contractor does not give the bond provided by the statute, laborers and materialmen have an equity under section 1 of the statute [Code of 1930, sec. 2274], in the funds due the contractor by the owner of the building. But where the bond is given as provided by the statute, such funds·are released from such equity or trust in favor of materialmen and laborers and go into the hands of the contractor untrammeled. The purpose of the bond section of the statute was to provide for the protection of materialmen and laborers, the bond being in lieu of their equity in the funds arising out of the building contract.''

Under these statutes and the construction thereof as outlined in the Dickson case, supra, when the Davis Company, Inc., required of the subcontractor the bond provided for by section 2276 of the Code of 1930, and the said contractor executed a bond satisfactory to his principal, the statutory restrictions on the right of the contractor to assign the proceeds of the contract were thereby removed, and upon the execution of this bond such funds were released from any ''equity or trust in favor of materialmen and laborers,'' and went ''into the hands of the contractor untrammeled.'' In view of the statutory provision that the bond executed by the private contractor is for the protection of laborers and materialmen, and is in lieu of their equity in the funds arising out of such a contract, the liability of the sureties on the bond of the subcontractor was in no wise affected by the assignment of the funds. After the execution of the bond required of the subcontractor, he assigned the pro-

ceeds of the contract, and his principal was at once notified in writing of this assignment, and it in writing acknowledged receipt of this notice. It was thereby remanded to its right against the subcontractor and his surety to reimburse itself for any amount it was required to pay out in exoneration of its surety under the original or public contract. The court below so held, and awarded the appellant a decree against Dabney and his sureties for the amount it was required to pay to the laborers and materialmen under the decree; and the decree of the court below will, therefore, be in all respects affirmed.

Affirmed.

**Smith, C. J.**, delivered a dissenting opinion.

Judge Anderson, who joins me herein, and I are of the opinion that sections 2275 and 2276, Code of 1930, have no application here, and that the rights of the several parties hereto are governed by section 5971, Code of 1930. Sections 2274 to 2280, inclusive, constitute the statutory scheme for securing the payment to subcontractors, laborers, and materialmen of the money due them in the construction of privately owned buildings or works, and article 6 of the chapter on Public Works, Code of 1930, in which section 5971 appears, is the statutory scheme for securing the payment to subcontractors, laborers, and materialmen of the money due them in the construction of public buildings and works. Each of these schemes is all-inclusive and excludes the other, and to intermingle them is not only confusing but creates situations, and results in imposing hardships on a contractor for the construction of a public building, never contemplated by the legislature.

Section 5971 first appeared in our statutes as section 1, chapter 217, Laws of 1918, but section 2274, to which sections 2275 and 2276 are ancillary, is a very old statute. The language of section 2274 is broad enough to cover

public buildings and works, but early in its history this court restricted it by interpretation to privately owned buildings and works only. Panola County v. Gillen, 59 Miss. 198; McGraw v. Board of Supervisors, 125 Miss. 420, 87 So. 897; McKinnon v. Gowan Bros., 127 Miss. 545, 90 So. 243.

In 1918 the legislature decided to extend to subcontractors, laborers, and materialmen in the construction of public buildings and works the protection given to such persons in the construction of publicly owned buildings and works. Two courses were open to it for that purpose: (1) An amendment to section 2274, Code of 1930, which then appeared as section 3074, Code of 1906; or (2) a separate statute dealing only with public buildings and works. It adopted the second of these methods by enacting chapter 217, Laws of 1918, which now appears as article 6 of the chapter on public works in the Code of 1930, being sections 5971-5976, inclusive, thereof.

Under section 3074, Code of 1906, when a contractor assigned the proceeds of a contract for the construction of a privately owned building, the assignee had the right to collect from the owner of the building the money due by him to the contractor to the exclusion of the subcontractors, laborers, and materialmen to whom the contractor may have become indebted in the construction of the building. To remedy this defect, the legislature at the same session thereof in 1918, at which it enacted chapter 217, Laws of 1918, enacted chapter 128 of the laws of that year, by which section 3074 was amended so as to enlarge the rights conferred therein upon subcontractors, laborers, and materialmen, and to prohibit the assignment of the proceeds of a contract for the construction of a privately owned building unless and until the contractor gives a bond to the owner of the building being, or to be, constructed ''guaranteeing the faithful performance of such contract . . . such bond [the statute further provides] shall also be subject to the

additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract.'' The statute then provided in detail for the enforcement against the bond of the payment of all persons furnishing labor or material in the construction of the building. This statute now appears in the first volume of the Code of 1930 in the chapter on Liens as sections 2274-2280, inclusive, which chapter deals only with liens on privately owned property.

The contract referred to in sections 2 and 3, chapter 128, Laws of 1918, the proceeds of which the contractor was prohibited from assigning to the prejudice of subcontractors, laborers, and materialmen until he had given the bond required by the statute, is manifestly the contract under which the preceding section of the statute gave subcontractors, laborers, and materialmen a qualified lien on the building to be constructed under the contract, which building, in order for the statute to come into operation, must be one that is privately owned. Authorities supra.

It is true that the contract between the Davis Company and Dabney is a private contract. Nevertheless the subject-matter thereof—the construction of a public bridge—is not within the contemplation of section 1, chapter 128, Laws of 1918. That the sections of that statute now constitute separate sections of the code is of no consequence, for they appear there in the same relative order as in the original statute.

The rights of subcontractors, laborers, and materialmen under section 5971 are broader than the rights of such persons under section 2274. Under the first the principal contractor and his sureties are liable to all subcontractors, laborers, and materialmen who contribute to the construction of the building or work for the payment of debts due them therefor, however remote their contracts for labor and materials may be from the prin-

cipal contractor. Oliver Const. Co. v. Dancy, 137 Miss. 474, 102 So. 568. But under sections 2275 and 2276 the principal contractor is liable only to subcontractors, laborers, and materialmen who contract directly with him. Alabama Marble Co. v. U. S. F. & G. Co., 146 Miss. 414, 111 So. 573. If this difference between the two statutes is observed, the decree appealed from cannot be affirmed, for it permits the Davis Company to recover on the bond given it by Dabney for the money the decree compels it to pay to laborers and materialmen who contracted, not with the Davis Company, but with Dabney, the subcontractor—a liability which should not be imposed on that bond unless Alabama Marble Co. v. U. S. F & G. Co., supra, is to be overruled.

The opinion of the majority seems to proceed on the theory that the question here for decision is "whether the principal contractor in a public building contract has the same right to subrogation as his surety upon the payment by the principal contractor of debts due laborers and materialmen contracted by a bonded subcontractor." I think this is a misconception of the issue. The question for decision is this: Has the Davis Company the right, in settling with Dabney's assignee, to deduct from the amount it agreed to pay Dabney for constructing the bridge the money paid by it to laborers and materialmen to whom Dabney was indebted for labor and material contributed in the construction of the bridge? The right of the Davis Company to make this deduction in no wise depends on the equitable doctrine of subrogation; in fact, there is no possible person to whose right so to do the Davis Company could be subrogated. That right is purely legal and undoubtedly exists under section 5971, and, I presume, would not be here questioned had the Davis Company not received from Dabney a bond for the faithful performance of his contract.

To construe these statutes as is here done places a contractor for the construction of a public building, who receives bonds for the faithful performance of their contracts from his subcontractors, in a worse situation than he would have been had he not received the bonds, for he thereby, in event the subcontractors assigned the proceeds of their contracts, becomes liable not only to pay to these assignees the full amount he had agreed to pay his subcontractors, but in addition thereto to pay the debts incurred by these subcontractors to laborers and materialmen who contributed to the construction of the building—a result which neither statute contemplates, and which is in conflict with Alabama Marble Co. v. U. S. F. & G. Co., supra. It is true that if Dabney and his bondsmen repay the Davis Company the money paid by it to these laborers and materialmen it will have lost nothing; but the Davis Company should not be compelled to assume this risk, and the statute did not so intend.

For these reasons Judge ANDERSON and I are of the opinion that the decree of the court below should be reversed and a decree should be rendered here according the Davis Company its rights under section 5971.