**KIMBERLY-CLARK CORPORATION, Plaintiff,**

v.

**ALPHA BUILDING COMPANY, et al., Defendants.**

**MERCHANTS AND FARMERS BANK, Defendant and Third-Party Plaintiff,**

v.

**AMERICAN FIDELITY FIRE INSURANCE COMPANY, Third-Party Defendant and Counterclaimant.**

No. EC81–108–LS.

United States District Court, N.D. Mississippi, E.D.

June 13, 1984.

Orma R. Smith, Jr., J. Price Coleman, Smith, Downs, Ross, Trapp & Coleman, Corinth, Miss., for plaintiffs.

J. Gordon Flowers, Gholson, Hicks & Nichols, Columbus, Miss., for defendants Alpha Bldg. Co., Inc., and Larry Fuller and Norman Jamison, d/b/a Alpha Bldg. Co. and Alpha Builders, and Merchants and Farmers Bank.

James H. Mathis, Corinth, Miss., for defendants Barnes and Wallace Bldg. Supply, Inc., and Bobby McDaniel, d/b/a Corinth Motor and Machine Works.

William L. Sharp, Sharp & Fisher, Corinth, Miss., for defendant Bailey Williams Agency, Inc.

Rebecca Coleman Phipps, Coleman & Phipps, Corinth, Miss., for defendants Dwight McKee, Shirley McKee, and Area Petroleum Co., Inc.

Gerald R. McLemore, Price, Krohn & McLemore, Corinth, Miss., for defendants General Bldg. Supply Co., Inc., and Bill

Norman, d/b/a Norman's Firestone Service Center.

G.A. Gafford, Freeland & Gafford, Oxford, Miss., for defendants Burton Shearin and Michael Shearin—Boliver Sand Co., Inc.

Ron A. Yarbrough, Ott & Purdy, Ltd., Jackson, Miss., for American Fidelity Fire Ins. Co.

Thomas L. Segrest, Graham, Segrest & Johnson, Columbus, Miss., for Steve Jamison.

Bennie L. Turner, Turner & Walker, West Point, Miss., for B & I Const. Co.

Wilbur O. Colom, Colom, Mitchell & Colom, Columbus, Miss., for Renee Means.

Glen H. Davidson, U.S. Atty., Thomas W. Dawson, Asst. U.S. Atty., Oxford, Miss., William D.M. Holmes, U.S. Dept. of Justice, Tax Div., Washington, D.C., for the U.S.

## MEMORANDUM OPINION

SENTER, Chief Judge.

This interpleader action comes before the court on seven motions for summary judgment. Having read the memoranda submitted by the parties together with the affidavits and exhibits and being otherwise fully advised in the premises, the court is now in a position to address the issues raised by these motions.

The facts relevant to these motions are as follows:

On or about March 27, 1979, Larry Fuller and Norman Jamison, d/b/a Alpha Building Company (hereinafter Alpha), entered into a construction contract with Kimberly-Clark Corporation (hereinafter Kimberly-Clark). American Fidelity Fire Insurance Company (hereinafter AFFI), as surety, issued its contract surety bond Number 04–446–2723735 to Kimberly-Clark, as obligee, on behalf of Alpha. This bond guaranteed that Alpha would faithfully perform its contract with Kimberly-Clark and pay all those who provided labor and material for use in the subject property in accordance with the terms of AFFI's bond. To induce American Fidelity to issue surety bonds on behalf of Alpha Building Company, Alpha and its principals executed a General Agreement of Indemnity dated December 11, 1978, in favor of American Fidelity. Under the terms of Section 8 of said Agreement, Alpha assigned to American Fidelity all rights in and to all subcontracts which may be entered into by Alpha, including its contract with Kimberly-Clark.

Under the terms of the contract between Alpha and Kimberly-Clark, Kimberly-Clark obligated itself to promptly pay Alpha for all work performed, less ten percent (10%) to be retained by Kimberly-Clark until all work had been satisfactorily completed by Alpha in accordance with the provisions of its contract.

On or about April 23, 1979, Larry Fuller and Norman Jamison d/b/a Alpha set over, transferred, and assigned to Merchants and Farmers Bank of Columbus, Mississippi (hereinafter M & F), all proceeds under its contract with Kimberly-Clark. Funds were advanced to the partnership in order to provide working capital for the projects the partnership had undertaken, including the Kimberly-Clark project.

Subsequently, on November 7, 1979, Larry Fuller and Norman Jamison incorporated their partnership which became known as Alpha Building Company, Inc. (hereinafter Alpha). The Secretary of State of the State of Mississippi issued a certificate of incorporation on December 6, 1979. The sole stockholders in Alpha were Norman Jamison and Larry Fuller—the former partners. Alpha assumed both the assets and liabilities of the partnership and acceded to its rights and obligations under all contracts, including the contract on the Kimberly-Clark project. Work which had continued to be performed was performed by Alpha rather than the partnership which no longer existed.

On December 17, 1979, Alpha received a $150,000 loan from M & F which was secured by "proceeds of all contract rights." The security interest in these proceeds was perfected by M & F by filing financing

statements in the Chancery Clerk's office in Tishomingo County and in the office of the Secretary of State. The perfection was accomplished on January 18, 1980.

On March 24, 1980, Alpha received a $200,000 loan from M & F which was secured by the contract proceeds of the Kimberly-Clark project. The security interest in these proceeds was promptly perfected by the filing of a financing statement with the Secretary of State and Chancery Clerk of Tishomingo County. One Hundred Fifty Thousand Dollars was disbursed on the date of the loan, March 24, 1980. On April 7, 1980, another $50,000 was disbursed to Alpha.

In the years of 1980–1981, Federal Withholding (FW) and Federal Insurance Contributions Act (FICA) taxes were assessed against Alpha by a delegate of the Secretary of the Treasury. Notice of and demand for payment of the assessments were made. The notices of federal tax liens were filed in either the office of the Chancery Clerk of Tishomingo County or the office of the Chancery Clerk of Lowndes County, or both, by an employee of the Internal Revenue Office in Tupelo. The following table establishes the date of the assessments, the taxable periods, the amounts of the assessments and dates that notices of the federal tax liens were filed.

| Taxable Period | Dates of Assessments, Notice of and Demand for Payment | Amount of Assessments | Dates Notices of Tax Liens Filed |
|---|---|---|---|
| 1st Qtr. 1980 | 7/29/80 | $38,861.36 | 8/8/81 |
| | | 788.48 | 1/10/81 |
| | | 3,597.43 | |
| | | 1,332.38 | 1/12/81 |
| 2nd Qtr. 1980 | 8/5/80 | 55,959.47 | 1/10/81 |
| | | 91.94 | 1/12/81 |
| | | 2,797.97 | |
| 3rd Qtr. 1980 | 3/30/81 | 23,457.96 | 7/20/81 |
| | | 327.39 | 7/21/81 |
| | | 134.64 | |
| | | 148.11 | |
| | | 26.92 | |
| 4th Qtr. 1980 | 4/20/81 | 4,782.88 | 7/20/81 |
| | | 125.19 | 7/21/81 |
| | | 239.14 | |
| | | 71.74 | |
| | | 32.27 | |

Alpha failed to pay all those who provided labor and materials for use in the subject project. They and others asserted liability against AFFI as Alpha's surety.

Kimberly-Clark filed this interpleader action on April 29, 1981, asserting that it holds retainage funds under the contract with Alpha and seeking a determination of the exact amount owed by it to Alpha. Additionally, Kimberly-Clark seeks a determination as to which of the defendant-creditors are entitled to the remaining contract funds. The total amount of retainage which Kimberly-Clark holds as the result of work performed by Alpha and which is the interpleader fund in this cause amounts to $101,886.62. Kimberly-Clark claims the right to set-off against that amount some $12,575. Alpha never completed the contract work and on December 23, 1981, Kimberly-Clark published notice of abandonment by Alpha of the contract. By order entered February 24, 1983, AFFI was allowed to enter this action. Pursuant to that order, the claims of Alpha's creditors are treated as cross-claims against AFFI.

By order dated November 15, 1983, this court determined that only certain of the claims represented by the suits filed herein are compensable under AFFI's bond. The claims held to be compensable under AFFI's bond are as follows:

| | |
|---|---|
| Barnes & Wallace Building Supply, Inc. | $    683.26 |
| Bobby McDaniel d/b/a Corinth Motor and Machine Works | 1,271.40 |
| Dwight and Shirley McKee | 11,840.00 |
| General Building Supply Company, Inc. | 1,134.36 |
| Burton and Michael T. Shearin d/b/a Bolivar Sand Company | 3,344.90 |
| Area Petroleum Company, Inc. | 1,480.11 |

## I.  BARNES & WALLACE BUILDING SUPPLY, INC.

Defendant Barnes & Wallace Building Supply, Inc., (hereinafter Barnes and Wallace) has moved for entry of summary judgment in the principal amount of $22,596.18 together with legal interest and reasonable attorney's fees pursuant to Miss. Code Ann. § 11–53–81 (1972). The defendant claims entitlement to summary judgment on the basis of this court's order entered November 15, 1983.

Barnes and Wallace claim priority to the interpled funds based upon a writ of garnishment dated March 10, 1981. AFFI has opposed this motion on the grounds that it is entitled to be exonerated and/or indemnified from the retainage funds for all losses, costs, and attorney's fees incurred by reason of having issued the bond on behalf of Alpha. This right, according to AFFI, is prior to the right of one in whose favor a writ of garnishment runs.

■ It is undisputed that the funds held by Kimberly-Clark are retainage funds. It is also clear that in Mississippi a surety has an equitable right of subrogation to indemnify it for all losses sustained by virtue of having given its bond. *Travelers Indemnity Co. v. Clark*, 254 So.2d 741, 745 (Miss. 1971). In *State v. Malvaney*, 221 Miss. 190, 72 So.2d 424, 430 (1954), the Mississippi Supreme Court states that:

[T]he retainage is for the mutual benefit and protection of the owner and the surety and ... where the surety, upon default of the contractor, is required under its bond to pay bills for labor and materials going into the construction, he may assert a claim to the retainage funds under the equitable doctrine of subrogation, and ... such right of subrogation begins as of the date of the execution of the bond.

■ AFFI issued its bond to Kimberly-Clark on behalf of Alpha on September 19, 1979. The writ of garnishment, upon which Barnes and Wallace rely, is dated March 10, 1981. Thus AFFI's right of equitable subrogation predates and takes priority over the claim of Barnes and Wallace. Barnes and Wallace have thus failed to prove that they have a prior right to be paid out of the interpled funds. Barnes and Wallace's motion for summary judgment is, therefore, not well taken and must be denied.

## II.  BOBBY McDANIEL

Bobby McDaniel (hereinafter McDaniel) has moved for summary judgment in the principal amount of $41,467.37 together with legal interest thereon and reasonable attorney's fees pursuant to Miss.Code Ann. § 11–53–81 (1972). McDaniel, like Barnes and Wallace, claims priority to the interpled funds based upon a writ of garnishment dated March 10, 1981. This court's discussion in regard to the motion for summary judgment filed by Barnes and Wallace establishes that AFFI's right of equitable subrogation predates and takes priority over the claims of McDaniel. McDaniel has thus failed to establish he has a prior right to the interpled funds. As a result, McDaniel's motion for summary judgment is not well taken and must be denied.

## III.  GENERAL BUILDING SUPPLY CO., INC.

General Building Supply Co., Inc., (hereinafter General Building) has moved for summary judgment against AFFI in the amount of $1,134.36 plus attorney fees pursuant to Miss.Code Ann. § 11–53–81 (Cum. Supp.1983). General Building asserts that

the order of this court dated November 15, 1983, adjudicated the validity of General Building's claim in the amount of $1,134.36. That order also established that said claim is compensable under AFFI's bond. Thus, according to General Building, it is entitled to judgment in regard to this claim as a matter of law.

AFFI has opposed this motion on the grounds that

(1) summary judgment is inappropriate because this court has not determined whether AFFI is entitled to be exonerated from liability;

(2) as a matter of law this claimant is not entitled to recover attorney's fees pursuant to Miss.Code Ann. § 11–53–81 (Cum. Supp.1983).

■ It is clear to this court that the issue of AFFI's entitlement to exoneration has no relevance to the issue now before this court. By order dated November 15, 1983, this court determined that the principal amount of General Building's claim is compensable under AFFI's bond. Clearly this claim is compensable under that bond regardless of this court's determination of either AFFI's entitlement to exoneration from liability or the priority of the pending claims to the retainage funds. General Building is, therefore, entitled to summary judgment against AFFI in the principal amount of $1,134.36.

General Building has also asserted its entitlement to attorney's fees pursuant to Miss.Code Ann. § 11–53–81. AFFI asserts that General Building is not entitled to such an award. Miss.Code Ann. § 11–53–81 (Cum.Supp.1983) provides that

"When any person fails to pay an open account within thirty (30) days after receipt of written demand therefor ... that person shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and collection of such claim ...."

■ Miss.Code Ann. § 11–53–81 clearly establishes Alpha's liability to General Building for attorney's fees. It is well settled, however, that a claimant on a contract surety bond, such as here involved, is not entitled to recover attorney's fees unless a statute or the contract with the surety so requires. *See Alexander v. Fidelity and Casualty Co.,* 232 Miss. 629, 100 So.2d 347 (1958). American Fidelity's bond covers a contract between private parties and is governed by Miss.Code Ann. § 85–7–185 (1972). *See Davis Company v. D'Lo Guaranty Bank,* 162 Miss. 829, 845, 138 So. 802, 805 (1932). Miss.Code Ann. § 85–7–185 does not require the payment of attorney's fees incurred by claimants to the bond. Nor does AFFI's contract and/or bond require the payment of such fees. Thus, although General Building might be entitled to attorney's fees in an action against Alpha, it is not entitled to attorney's fees in this action against AFFI. General Building's motion for summary judgment in this regard must, therefore, be denied.

## IV. BOLIVAR SAND COMPANY, INC.

■ Bolivar Sand Company, Inc. (hereinafter Bolivar Sand) has moved for entry of summary judgment in the principal amount of $3,344.90 plus attorney's fees pursuant to Miss.Code Ann. § 11–53–81 (Cum.Supp. 1983) in the amount of $836.23. The validity of the claim of Bolivar Sand in the principal amount was adjudicated by this court in its order dated November 15, 1983. AFFI has opposed Bolivar Sand's motion on the same grounds which it asserted in opposition to the motion of General Building. The court's discussion in regard to the motion of General Building applies equally in regard to this motion. Thus, Bolivar Sand is entitled to summary judgment in the principal amount of $3,334.90 but is not entitled to attorney's fees incurred in the prosecution of this claim.

## V. MERCHANTS AND FARMERS AND AMERICAN FIDELITY FIRE INSURANCE COMPANY

M & F has moved for summary judgment establishing its priority to the fund over the claims of Alpha's creditors, AFFI and the United States of America, Depart-

ment of the Treasury, Internal Revenue Service (hereinafter IRS). AFFI has also filed a motion for summary judgment in regard to the priority of its claim to the fund involved in this interpleader action. To the extent that M & F and AFFI's motions address the issue of whether M & F's claim or AFFI's claim takes priority, the motions will be treated as cross-motions for summary judgment.

### (A) M & F's Position in Regard to Account Creditors.

M & F asserts that the collateral assignment given to it by Larry Fuller and Norman Jamison d/b/a Alpha gives M & F priority over Alpha's account creditors. On April 23, 1979, Larry Fuller and Norman Jamison, partners, d/b/a Alpha Building Company, did

SET OVER, TRANSFER, ASSIGN AND CONVEY unto said Merchants and Farmers Bank of Columbus, Mississippi, all of our right, title, claim and interest in and to the contract proceeds due to be paid to Alpha Building Company by Kimberly-Clark Corporation, a Delaware corporation, by virtue of subcontract-agreement dated March 27, 1979, for the performance of certain labor and furnishing of certain materials for the construction of masonry work, at Kimberly-Clark plant, Corinth, Alcorn County, Mississippi.

It is the condition of this assignment that all of the said contract proceeds shall be unequivocally and irrevocably assigned to and for the benefit of said Bank ....

■ It is clear that such an absolute assignment of contract proceeds conveys, to the extent of the agreement, the entire interest of the assignor, Alpha Building Company—the partnership, which thereafter had no further rights to the contract proceeds. *International Harvester v. People's Bank and Trust*, 402 So.2d 856, 861 (Miss.1981). Thus, as soon as Fuller and Jamison assigned their interest in the subcontract proceeds to M & F, the bank became vested with a right to those proceeds which "takes priority over subsequent cred-

itors [such as laborers and materialmen that are open account creditors] of the assignor who had no lien on the subject matter of the assignment at the time it was made, or over representatives of creditors, who stand in the assignor's shoes and take subject to all equities against him." *International Harvester*, 402 So.2d at 861.

In *Schoolfield v. Hirsh*, 71 Miss. 55, 14 So. 528 (1893) the Mississippi Supreme Court stated that:

[t]he assignment [of a judgment] certainly vested the legal title of the judgment in Pohl, and that put it beyond the reach of garnishment at law; and, in a contest in a court of chancery between conflicting equities, the beneficiaries of the assignment, being prior in time, would be prior in right to the garnishing creditor.

■ When this rule is applied to the facts of the action *sub judice*, it is clear that M & F, having received an assignment of the contract proceeds on or about April 23, 1979, has priority over all laborers and materialmen as open account creditors.

Bobby McDaniel and Barnes and Wallace Building Supply, Inc., argue in their motions for summary judgment that the claims of M & F should not be allowed because

(1) the collateral assignment upon which M & F relies cannot form the basis of a claim inasmuch as the contractual proceeds which have been interpled arise from a contract dated April 6, 1979, and the assignment refers to proceeds of a subcontract agreement dated March 27, 1972;

(2) the contract of April 6, 1979, is not assignable without the written consent of Kimberly-Clark and no such consent was given.

The Collateral Assignment which is dated April 23, 1979, indicates that it assigns the contract proceeds due Alpha under a subcontract agreement "dated March 27, 1979." The Complaint for Interpleader and Declaratory Relief which was filed by Kimberly-Clark had attached as Exhibit A a copy of the agreement between Larry Full-

er, Norman Jamison and Kimberly-Clark which is dated March 27, 1979. Thus, a simple examination of the facts indicates that the arguments of Barnes and Wallace and McDaniel are patently without merit.

■ Paragraph 25.1.0 of the contract between Kimberly-Clark, Fuller, and Jamison prohibits the assignment of any payment due Fuller and Jamison. The validity of such a prohibition has, however, been rejected by the Mississippi Supreme Court. *Mississippi Bank v. Nickles & Wells*, 421 So.2d 1056 (Miss.1982). The *Nickles* decision specifically overruled prior decisions of the court holding that a construction contract could effectively prohibit an assignment of money due.

The decision in *Mississippi Bank, supra*, was reaffirmed by the court holding in *Western Casualty and Sur. Co. v. Mississippi*, 423 So.2d 123, 125 (Miss.1982). Thus, the contractual language found at paragraph 25.1.0 of the agreement between the partnership and Kimberly-Clark is no impediment to a valid assignment of contract proceeds under the law of this state and for that reason must be disregarded.

■ The facts of the action *sub judice* reveal that M & F has properly perfected security interests in the contract proceeds of this project by virtue of financing statements properly filed in January and March of 1980. The perfection of these security interests vests M & F with a claim to the proceeds of the contract which takes priority of any claims of open account creditors and/or judgment creditors subsequent in time. *International Harvester Co. v. Peoples Bank and Trust Co., supra.*

### (B) Merchants and Farmers' Position in Regard to IRS.

M & F asserts that its claims have priority over the tax liens perfected by the IRS.[1] 26 U.S.C. § 6323 provides, in pertinent part, that

(a) [T]he lien imposed by Section 6321 shall not be valid as against, any purchase, holder of a security interest, mechanics' lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (F) has been filed by the Secretary.

A security "interest" as defined by 26 U.S.C. § 6323(h) is

any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

M & F's claim would appear to fit this statutory definition.

■ It is clear that a tax lien does not prevail against a prior perfected lien. *Aetna Ins. Co. v. Texas Thermal Industries, Inc.*, 591 F.2d 1035, 1038 (5th Cir.1979); *S. D'Antoni v. Great Atlantic & Pacific Tea Co., Inc.*, 496 F.2d 1378 (5th Cir.1974). "§ 6323 specifically subordinates federal tax liens to security interests ... that are perfected under the UCC provision of state law prior to the filing of the tax lien ...." *Aetna Ins. Co.*, 591 F.2d at 1038.

■ The answer filed by the IRS indicates that the IRS has claims against Alpha Building Company, Inc., the earliest of which was filed August 8, 1980. The financing statements which were filed in conjunction with the promissory notes and security agreements upon which M & F relies were filed in the appropriate locations on January 8, and March 27 and 28, 1980. The security interests asserted by M & F were properly perfected prior to the filing of the tax lien. M & F's claims thus have priority over any claims of the IRS under

---

1. IRS has not opposed M & F's motion. The court will, therefore, proceed to determine the merits of M & F's position.

these tax liens. M & F is, therefore, entitled to summary judgment on this issue.

(C) The Priority of Merchants and Farmers Bank and American Fidelity Fire Insurance Company's Claims.

Merchants and Farmers Bank asserts that the priority of its claim under the collateral assignment was established as of April 23, 1979—the date of the collateral assignment. M & F also asserts that the amount of the claims and attorney's fees expended by AFFI should be borne by AFFI with no right to reimbursement from the interpled fund.

AFFI, in its motion for summary judgment, seeks a determination that it has a prior right to the interpled fund as to all other parties to this cause to the extent necessary to exonerate AFFI from the liability represented by this court's order of November 15, 1983 and/or indemnify AFFI—by way of equitable subrogation—to the extent of all losses, costs, expenses, and attorney's fees incurred by AFFI as the result of having issued its bond on behalf of Alpha.

■■■ American Fidelity claims priority to the interpled fund in this cause based upon its asserted equitable right of subrogation. The doctrine of equitable subrogation is applied where "the [surety] has been required to pay a debt for which the [principal obligators] are primarily liable and which in equity and good conscience should be discharged by them." *Lyon v. Colonial United States Mortgage Company,* 129 Miss. 54, 91 So. 708, 709 (1922). This right of subrogation begins as of the date of the execution of the bond. *State v. Mulvaney,* 221 Miss. 190, 72 So.2d 424, 430 (1954).

■■■ In the instant case, the court's order of November 15, 1983, has found that certain claims in this cause are compensable under AFFI's bond. Therefore, AFFI has been placed in a position of potential liability for certain debts for which Alpha, as principal obligor, is primarily liable and which in equity and good conscience should have been discharged by Alpha, because Alpha incurred those debts. Thus, the doctrine of equitable subrogation is applicable.

■■■ The Bank argues that "subrogation does not exist to protect a commercial surety such as AFFI." As the authorities cited hereinafter demonstrate, the doctrine of equitable subrogation has been applied by the Mississippi Supreme Court to protect commercial sureties, like American Fidelity, in a number of instances—including priority disputes such as this between a commercial surety and a commercial bank, like Merchants and Farmers Bank.

Having found that the doctrine of equitable subrogation is applicable to AFFI's claim, the next question for resolution is whether the Bank, as Alpha's assignee, has a prior right to this interpleader fund or whether AFFI, as Alpha's surety, has a prior right to this same fund. The fund interpled by Kimberly-Clark amounts to $101,886.62 subject to set off claims of Kimberly-Clark. It is undisputed that this fund consists of retainage, not progress payments earned by Alpha.

In *Reliance Insurance Company v. First Mississippi National Bank,* 263 So.2d 555, 558 (Miss.1972), the Mississippi Supreme Court stated that:

The real question in this case is whether the subrogation rights of the surety were superior to the rights of the Bank under its assignment. We are of the opinion that insofar as the rights of an assignee of a public construction contract and those of surety are concerned, the question is well settled by former decisions of this Court. In *First National Bank of Aberdeen v. Monroe County,* 131 Miss. 828, 95 So. 726 (1923), we held that the surety did not have superior equity to progress payments due under a public contract over an assignment held by a bank who had advanced funds used by the contractor in paying for materials and labor in performance of the contract. In *Canton Exchange Bank v. Yazoo County,* 144 Miss. 579, 109 So. 1 (1926), we held that the doctrine of *equitable subrogation applied to the bond at its inception and that the surety had a*

*paramount right to the retainage fund over an assignment to the bank of these funds.* However, we specifically limited the right of subrogation to the retainage fund.... [Emphasis added.]

The case cited by M & F in support of its claim to priority is inapposite. That case deals with the priority of a surety in regard to progress payments under the contract, not retainage funds. *See First National Bank v. Monroe County,* 131 Miss. 828, 95 So. 726, 730–31 (1923). In fact the Mississippi Supreme Court has clearly distinguished its holding in *First National Bank, supra,* in regard to progress payments, in *Canton Exchange Bank v. Yazoo County,* 144 Miss. 579, 109 So. 1 (1926). In *Canton Exchange Bank,* the court stated that:

> a critical examination of [*First National Bank v. Monroe County*] disclosed that no effort was made in the statement of the case, in the reasoning of the case, in the authorities cited, or in the conclusion reached, to settle the question of whether or not there is an equity of subrogation in the surety whose principal has failed to pay the laborers and materialmen, so that, in our opinion, the court expressly pretermitted expressing any opinion on this question as to the retainage fund, and only held that there was no equity of subrogation to the surety on the bond in the progress fund as against the assignee of the contractor. No other thing is adverted to or decided. [Emphasis added.]

109 So. at 5.

The Court's statement set out above clearly indicates that the authority upon which M & F relies, namely, the holding in *First National Bank v. Monroe County* is completely inapposite.

M & F also attempts to argue the relative equities of the parties in the action *sub judice.* M & F asserts that this is not a case where the surety has a superior equity but in fact M & F has the greater equity. At the time it made the loans to Alpha, M & F relied on the proceeds of the contract as collateral to secure the loan. Thus, according to M & F, it would be highly inequitable for the surety to now be allowed to have a greater claim to the remaining funds than the assignee bank. M & F's argument, however, ignores the holding in *Canton Exchange Bank v. Yazoo County, supra.* In *Canton Exchange Bank,* in holding that the surety has a prior right of equitable subrogation to retainage, the court stated that:

> [t]he disposition of the retainage fund in this case must be determined by the relative rights of the parties to this litigation, considering the legal as well as the equitable rights. [Emphasis added.]

109 So. at 5.

It would appear that the Mississippi Supreme Court's rulings in *Canton Exchange Bank v. Yazoo County, supra,* and *Reliance Insurance Co. v. First Mississippi National Bank, supra,* dispose of any equitable objection raised by the Bank.

▮ The court is, therefore, of the opinion that AFFI is entitled to be subrogated to the retainage funds interpled by Kimberly-Clark. In addition, the court finds that AFFI's right to subrogation takes priority over the claim asserted by M & F. Furthermore, American Fidelity's subrogation right includes the right to be indemnified for its expenses and attorney's fees incurred as the result of Alpha's default. *Travelers Indemnity Company v. Clark,* 254 So.2d 741, 745 (Miss.1971). The court in *Travelers* stated that the surety was entitled to be subrogated "to the extent necessary to indemnify it for losses sustained on that project." 254 So.2d at 745.

▮ Additionally, to the extent that American Fidelity seeks indemnification from the retainage on the Kimberly-Clark project, American Fidelity is not required to perfect any claim of right under the Uniform Commercial Code in order to defeat Alpha's general, unsecured creditors.

> The rights of a surety to subrogation for its losses are founded on equitable principles independent of any assignment of contract proceeds in the application of the contractor.... Upon what appears

to be the soundest reasoning and the weight of authority, we hold that a surety's right of subrogation is unaffected by the filing requirements of the Uniform Commercial Code. [Citations omitted.]

*Travelers,* 254 So.2d 745–6.

The court thus finds that M & F's motion for summary judgment on the issue of the priority of its claim over the claim of AFFI is not well taken. The court further finds that AFFI's motion for summary judgment on the issue of the priority of its subrogation rights over the claim of M & F is well taken and should be granted.

AFFI also seeks, in its motion for summary, an order

(1) exonerating American Fidelity by directing that the interpleader fund be disbursed to the extent necessary to pay those claimants holding compensable claims, as found by this court's November 15, 1983, order;

(2) discharging American Fidelity from any further liability on its bond, and for such other relief to which this court finds American Fidelity entitled.

██ The amount due by Kimberly-Clark has not yet been established. Additionally, there are several claims to the interpled funds which remain before this court in this action. As a result, the court is of the opinion that the relief requested by AFFI is inappropriate at this time in the litigation. AFFI's motion for summary judgment on these issues must, therefore, be denied.

An order in conformity with this opinion shall issue.