**BALBOA INSURANCE CO., Plaintiff,**

v.

**BANK OF BOSTON CONNECTICUT, Defendant.**

**Civ. No. N–88–115 (TFGD).**

United States District Court, D. Connecticut.

Nov. 30, 1988.

---

Mark E. Blakeman, Hartford, Conn., for plaintiff.

Francis G. Pennarola, Danbury, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DALY, Chief Judge.

Plaintiff brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 to determine whether plaintiff, a completing payment bond surety, or defendant, an assignee lender, has the right to judgment proceeds resulting from a state court disposition of a suit on a contract between the State of Connecticut Department of Transportation and a general contractor. Jurisdiction is based upon diversity of the parties. 28 U.S.C. § 1332. Plaintiff now moves this court for summary judgment declaring that it is entitled to the judgment proceeds. The defendant, in opposing plaintiff's motion, contends that genuine issues of material fact remain to be tried, and additionally, that it is entitled to reimbursement on its counterclaim for money that was allegedly loaned to the contractor at the behest of the plaintiff. For the reasons set forth below, plaintiff's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The undisputed facts regarding plaintiff's claim are as follows. On November 30, 1981, William Martin, on behalf of himself and Goshen Excavators (the "contractor"), executed a general indemnity agreement ("GIA") with the plaintiff. A second GIA was executed on June 23, 1983 between the plaintiff, the contractor, and the contractor's wife. Subsequently, on July 7, 1983, the contractor executed a contract with the State of Connecticut Department of Transportation (the "DOT") to perform construction on a bridge in Stafford, Connecticut (the "project"). Pursuant to the terms of the contract, the plaintiff executed a performance bond and payment bond each in the amount of $129,692. The contractor was the named principal, the plaintiff was the surety, and the DOT was the obligee. These bonds were executed in consideration of the GIA entered into by the contractor and his wife. Several months later, on September 8, 1983, the contractor assigned his right to future payments under the contract to the defendant as consideration for a $60,000 revolving credit note with the defendant. The defendant filed a certificate reflecting the assignment with the Connecticut Secretary of State on September 21, 1983. The credit note was executed one month later on October 28, 1983.

The contractor initiated work on the project on July 20, 1983, and ceased working on the project on December 23, 1983. The plaintiff was subsequently informed by the DOT that the contractor had failed to perform the contract in accordance with its terms, and had failed to pay various subcontractors and materialmen. As a result, pursuant to its obligation under the payment bond, the plaintiff paid approximately five payment bond claims totalling $40,388.47 to subcontractors and materialmen, and incurred approximately $13,171.12 in expenses.

Soon thereafter, the plaintiff was notified by the DOT that the contractor was in default under the contract, and the DOT intended to make a claim on the perform-

ance bond. Subsequently, the contractor filed a state court action against the DOT to recover funds allegedly owed to him under the contract, and on May 12, 1986, the contractor executed an assignment of judgment proceeds in favor of the plaintiff. The contractor obtained a judgment against the DOT in the amount of $55,-418.39 which, after payment of attorneys fees and costs, resulted in a net recovery of $39,156.24. By agreement between the plaintiff and defendant, the judgment proceeds have been placed in escrow.

Significant issues of disputed fact appear to remain on defendant's counterclaim.[1] Defendant contends that a loan of $13,-820.81 was made on behalf of the contractor and at the expense of the defendant prior to the cessation of work on the project. The defendant claims that this loan was made with the plaintiff's encouragement so that the contractor could complete the project. The defendant argues that it would not have advanced the funds unless they were to be repaid through the contract proceeds. Further, and more significant to the instant case, the defendant contends that if the loan was not executed, the contractor would have been unable to complete the project, and accordingly, no judgment proceeds would exist at this time to create the underlying dispute.

### DISCUSSION

1. Priority Between a Surety and an Assignee Lender

Plaintiff alleges that by virtue of the doctrine of equitable subrogation, it is entitled to the judgment proceeds awarded to the contractor. Defendant contends in response that to allow the surety to recover in the instant case would promote the use of "secret liens" prohibited by Article 9 of the Uniform Commercial Code. Since the facts regarding the payment of the surety bonds are undisputed by the defendant, the

only issue remaining is a question of law: Who has priority over the judgment proceeds?

(a) *Equitable Subrogation and Article 9*

█ Subrogation is an equitable remedy, the purpose of which is to "compel the ultimate discharge of a debt or obligation by one who in good conscience ought to pay it." *Hartford Accid. and Indem. Co. v. Chung,* 37 Conn.Supp. 587, 594, 429 A.2d 158, 162 (Appell.Sess.1981). Accordingly, subrogation is intended to be used as a remedy in order to aid the enforcement of a legal right. *Id.* The doctrine of equitable subrogation is fully applicable where, as here, a party seeks reimbursement for a debt paid under the compulsion of a payment and performance bond. *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 137, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962). *See* 4 A. Corbin, *Corbin on Contracts* § 901 (1951) [hereinafter *Corbin*].

█ The purpose of Article 9 of the Uniform Commercial Code is to regulate all consensual security agreements covered by the Code. Conn.Gen.Stat. § 42a–9–102.[2] The Article is not exclusive in coverage, however. Its application is limited to transactions entered into at the consent of the parties and memorialized in a contract. Conn.Gen.Stat. § 42a–9–102(2). An equitable lien is not a covered transaction because it arises not by consent, but by operation of law. *In re J.V. Gleason Co., Inc.,* 452 F.2d 1219, 1222 (8th Cir.1971). Furthermore, the drafters of the Code rejected the inclusion of a provision regulating the obligation to reimburse a surety. The drafters noted that the inclusion of such a section would unnecessarily restrict the surety's ability to bargain with a lender over the subordination of the surety's claim. Recommendation of the Editorial Board for Changes in the Text and Com-

---

1. Plaintiff's moving papers do not indicate whether plaintiff's motion is also directed at defendant's counterclaim. The Court will construe it as such since plaintiff is moving for summary judgment as to the entire fund now held in escrow.

2. The overall aim of the Article is to "provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." Conn.Gen.Stat. § 42a–9–101 comment (1960).

ments of the Uniform Commercial Code, U.C.C. § 9–312, at 24–5 (Proposed Official Draft, Text and Comments Edition, 1953). Accordingly, the Code makes no reference to the position of the surety, and in light of the Code's application of general principles of law and equity to non-Code covered transactions,[3] it is evident that the doctrine of equitable subrogation survives the Code's enactment.

### (b) *Priority Among the Competing Interests*

The issue still remains, however, as to which party has priority over the judgment proceeds. The defendant, as a lien creditor, has satisfied the requirements of Conn.Gen.Stat. § 42a–9–302 by filing the necessary certificate with the Connecticut Secretary of State. Furthermore, the plaintiff has demonstrated its right to recover the judgment proceeds under the doctrine of equitable subrogation by performing its obligations under the payment bonds to the laborers and materialmen. The question of which competing interest has priority is a novel one in this state. The Court is not without guidance, however, as several others courts have had the opportunity to pass upon this issue.

In *In re J.V. Gleason Co., Inc.*, 452 F.2d 1219 (8th Cir.1971), the Eighth Circuit considered the conflicting priority of a bankruptcy trustee as a lien creditor and a surety. In holding that the surety had priority, the court noted that the surety's rights to the retained funds matured when it paid off the debt owed by the owner to the materialmen and laborers. *Id.* at 1225. Therefore, despite the fact that the trustee had a statutory lien on the funds, the court found that the trustee had no right to distribute the funds because the surety's right was primary, thus defeating the trustee's right of ownership. *Id. See also Riverview State Bank v. Wentz*, 34 F.2d 419 (8th Cir.1929) (held surety had priority over lender in view of fact that bank was under no compulsion to lend the funds, and surety bond was statutory requirement).

More recent cases also support the proposition that a surety has priority over an assignee lender. In *Kimberly–Clark Corp. v. Alpha Bldg. Co.*, 591 F.Supp. 198 (N.D.Miss.1984), the court considered the competing claims of a surety and an assignee bank. Although the contractor assigned the bank the right to all future payments under the contract as consideration for a loan, and the bank perfected its security interest through the proper filing procedures, the court held that the surety had priority over the bank to the contract funds. *Id.* at 209. The court found that despite the bank's claim that it relied upon the proceeds of the contract as collateral to secure its loan, the surety was placed in the position of a principal obligor, thus entitling it to reimbursement. *Id.* at 207–8. *See also First Alabama Bank of Birmingham v. Hartford Acc. and Indem., Inc.*, 430 F.Supp. 907 (N.D.Ala.1977) (surety given priority despite the fact the assignee lender's rights vested simultaneously with surety's rights); *First Vermont Bank & Trust Co. v. Village of Poultney*, 134 Vt. 28, 349 A.2d 722, 726 (1975) (notice to the lender of the surety's interest was significant to holding surety had priority).

It is apparent from the foregoing review of the case law that a surety should be given priority over an assignee lender. When a surety performs its obligations under a performance and payment bond, it stands in the shoes of the contractor. Thus, if the contractor has the right to the retained funds, the surety accedes to those rights when it meets its obligations under the bonds. *See, e.g., Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320 (5th Cir.1967), *cert. denied*, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968); *Corbin*, § 901.

Furthermore, the Court rejects defendant's contention that to hold the surety's claim superior to the assignee lender will sanction secret liens. Under Conn.Gen. Stat. § 49–41, a necessary prerequisite to the award of a public contract exceeding twenty-five thousand dollars is the posting

---

**3.** Conn.Gen.Stat. § 42a–1–103 provides: "Unless displaced by the particular provisions of this title, the principles of law and equity … shall supplement its provisions."

of a bond by a surety. This statutory requirement is designed to protect laborers and materialmen who are employed to work on public projects. *See American Masons' Supply Co. v. F.W. Brown Co.,* 174 Conn. 219, 384 A.2d 378 (1978). The existence of the statutory requirement defeats the proposition that the surety's claim in this case was in any sense concealed or secret. On the contrary, the underlying construction contract could not have been formed absent the participation of the plaintiff. Accordingly, there is no merit to defendant's contention that to hold the surety's interests paramount over a perfected security interest would promote secret liens. The Court therefore holds that, by virtue of the doctrine of equitable subrogation, the surety has priority to the retained funds.

### 2. Defendant's Counterclaim

■ The defendant contends that it is entitled to $13,820.81 loaned to the contractor at the encouragement of the plaintiff, and that to allow the plaintiff to recover this amount would unjustly enrich the plaintiff at the expense of the defendant. Plaintiff denies this allegation. Since the Court is satisfied that genuine issues of material fact regarding the counterclaim remain to be tried, the motion for summary judgment is DENIED as to defendant's counterclaim.

### CONCLUSION

Plaintiff's motion for summary judgment is GRANTED on plaintiff's complaint insofar as plaintiff's right to the retained funds of $39,156.24 takes priority over defendant's claim based on a perfected security interest. The motion is DENIED as to defendant's counterclaim.

SO ORDERED.